MARTHA MATHEWSON *v.* EDSON H. MATHEWSON.

Special Term at St. Johnsbury, February 19, 1908.

Present: ROWELL, C. J., TYLER, MUNSON, and WATSON, JJ.

Opinion filed May 7, 1908.

*Divorce—Grounds—"Intolerable Severity"—What Constitutes —Evidence—Mental Anguish—Judicial Notice—Unfounded Charge of Adultery—Condonation—Waiver—Documentary Evidence—Void Findings—Privilege Communications —Testimony in Court—Opinion Evidence—Inferences from Observed Facts—Alimony—Evidence—Libellant's Debts.*

In a divorce proceeding, "intolerable severity" may be established by evidence of any line of misconduct persisted in by the offending party to such an extent as to cause injury to the life, limb, or health of the other, or to threaten, or to create a danger of, such injury; and it is not necessary that such injury, present or threatened, should be the direct result of such misconduct, but it is sufficient if it is produced by grief, worry, or mental anguish caused by such misconduct.

Where the facts and circumstances are so decisive of actual or apprehended bodily harm, resulting from mental suffering, that there

can be no difference of opinion about it, the court may take judicial notice thereof; but where the circumstances are not thus decisive, the fact that bodily harm.has resulted from mental suffering must be found before it can be said to exist.

In a divorce proceeding, the facts certified up *held* not to show bodily harm, nor a reasonable apprehension thereof, resulting from mental suffering caused by libellee's misconduct.

The fact that a libellee in a divorce proceeding testified that he wanted his wife to have a divorce, but was unwilling she should have more than a third of what he was worth, and his counsel asked the court so to find, should not be construed as asking for a divorce at all events, but only on condition that the alimony should not be more than a third of what the libellee was worth.

A husband's wilful desertion of his wife, which, if continued the requisite time, would ripen into a cause of divorce, nullifies any condonation of his previous misconduct toward her.

Where, in a trial in county court on appeal from a probate court's decision appointing a guardian for a person as insane, the jury specially found that the person was nonresident when the proceedings were begun and was not insane as alleged, whereupon the case was dismissed for want of jurisdiction, the docket entries showing those findings were improperly admitted in a subsequent divorce proceeding against that person, to show that he was sane at the time of said trial in which he charged his wife with adultery.

The admission of those findings was prejudicial to the libellee, though he made no claim that he was insane at the time in question, for the issue of the libellant's adultery, on which the evidence was received, was a live issue throughout the case.

Whatever a party testified to in court on trial of an action against him, if pertinent and material to the subject of inquiry is privileged, the occasion excludes the legal notion of malice, and within that limit the protection is complete against the other party, however false and malicious the testimony, and therefore, where a husband, in proceedings to appoint a guardian for him, gave material testimony charging his wife with adultery, evidence of that fact was inadmissible against him in a subsequent proceeding for a divorce.

When a witness has had personal observation, and the facts and circumstances that lead his mind to a conclusion are incapable of being so detailed as to enable another to comprehend them, he may add his opinion or the conclusion induced by such observa-

tion; and, therefore, a witness, after stating the language and con-
duct of a person, was properly allowed to add the inference that
the person had a wilful, unpleasant, and dominating disposition.

In a divorce proceeding instituted by the wife, evidence of libellant's
debts for which libellee was not responsible, is inadmissible on the
question of the amount of alimony to be allowed.


PETITION FOR DIVORCE, on the grounds of intolerable severity
and refusal to support. Trial at the June Term, 1907, Cale-
donia County, *Miles,* J., presiding. Divorce granted for intoler-
able severity, with an allowance of $1,150 alimony. The pe-
titionee excepted. The opinion states the case.


*Elisha May,* and *Howe & Hovey* for the petitionee.


It is the settled rule in England that to constitute such
cruelty as would justify the court in decreeing a divorce, there
must be either actual violence committed, attended with danger to
life, limb, or health, or there must be reasonable apprehension
of such violence. *Evans* v. *Evans,* 4 Eng. Enc. 310; *Holden* v.
*Holden,* 4 Eng. Enc. 452. A false charge of adultery, made
without reasonable or probable cause, unaccompanied by the
slightest act of physical violence or apprehension thereof, and
unaccompanied by such injury to the feelings as to affect the
health or create a reasonable apprehension that it may be af-
fected, does not constitute legal cruelty as a ground for divorce.
*Holyoke* v. *Holyoke,* 78 Me. 404; *Jones* v. *Jones,* 62 N. H. 463;
*Pidge* v. *Pidge,* 3 Met. 261; *Bailey* v. *Bailey,* 97 Mass. 373;
*Shaw* v. *Shaw,* 17 Conn. 189; *Kennedy* v. *Kennedy,* 73 N. Y.
369; *DeMelli* v. *DeMelli,* 67 How. Pr. 33; *Smith* v. *Smith,* 40
N. J. Eq. 566; *Mason* v. *Mason,* 131 Pa. St. 161; *Farnum* v.
*Farnum,* 73 Ill. 497; *Nullmeyer* v. *Nullmeyer,* 49 Ill. App. 573;
*Maddox* v. *Maddox,* 189 Ill. 152; *Johnson* v. *Johnson,* 107 Wis.
186; *Small* v. *Small,* 57 Ind. 568; *Folmar* v. *Folmar,* 69 Ala.
84; *Evans* v. *Evans,* 82 Iowa 462; *Morris* v. *Morris,* 73 Am.
Dec. 615; *Palmer* v. *Palmer,* 40 Am. Rep. 463; *Hamaker* v.
*Hamaker,* 65 Am. Dec. 705; *Shutt* v. *Shutt,* 71 Md. 193.

Cohabitation to the extent found constitutes condonation.
*Deliber* v. *Deliber,* 9 Conn. 233; *Marshall* v. *Marshall,* 65 Vt.
238.

The order for payment of $1,150 alimony was a gross abuse of discretion. The finding of the court is that at the time of the granting of the decree the petitionee's assets were worth $3,450 and that his debts aggregated $2,721.63, making the total value of his estate $728.37. The alimony exceeds his total estate by $421.63 and if paid will be taking the money from his creditors. As was said in *Buckmaster* v. *Buckmaster*, 38 Vt. 248: "As a matter of sound public policy where husband and wife are divorced the wife should not be encouraged to think she has a continuing lien upon the late husband for her support. On the contrary the divorce and the decree of alimony should be understood as between them to end their relations and obligations." *Cowan* v. *Cowan*, 16 Col. 335; *Wilson* v. *Wilson*, 102 Ill. 297; *Andrews* v. *Andrews*, 69 Ill. 609; *Graft* v. *Graft*, 76 Indiana 136; *Connor* v. *Connor*, 29 Ind. 48; *Rouke* v. *Rouke*, 8 Ind. 427; *Ensler* v. *Ensler*, 72 Ia. 159; *Fletcher* v. *Fletcher*, 54 S. W. 953; *Beall* v. *Beall*, 80 Ky. 675; *Cummings* v. *Cummings*, 50 Mich. 365; *McConahy* v. *McConahy*, 21 Neb. 466; *Williams* v. *Williams*, 6 So. Dak. 284; *Fletcher* v. *Fletcher*, 57 S. W. 387; *Feigley* v. *Feigley*, 61 Am. Dec. 375; *Chenoult* v. *Chenoult*, 5 Sneed 248; *Park* v. *Park*, 18 Hun. 466.

It was error to admit the docket entries showing the special verdicts in the guardianship proceeding. A verdict is never conclusive except as to those matters that are the precise basis of the judgment. *Gilbert* v. *Thompson*, 9 Cush. 348; *Burlen* v. *Shannon*, 99 Mass. 200; *Hawks* v. *Truesdell*, 99 Mass. 557; *Baldwin* v. *Doubleday*, 59 Vt. 7; *Hodge* v. *Bennington*, 43 Vt. 450; *Davis* v. *Judge*, 46 Vt. 455; *Billings Company* v. *Hanger*, 62 Vt. 160; *Murray* v. *Mattison*, 67 Vt. 553.

It was error to admit evidence of the fact that libellee in his testimony in the guardianship proceedings charged his wife with adultery. That statement being material testimony, was privileged. *Torrey* v. *Field*, 10 Vt. 353; *Mower* v. *Watson*, 11 Vt. 536; *Nott* v. *Stoddard*, 38 Vt. 25; *Clemmons* v. *Danforth*, 67 Vt. 617; Cooley Torts, 211.

It was error to exclude petitionee's offered evidence that petitioner had a wilful, unpleasant, and domineering disposition. Stewart's Mar. & Div. §375; *Clifford* v. *Richardson*, 18 Vt. 626; *Cavendish* v. *Troy*, 41 Vt. 108; Lawson's Expert Ev. Rule No. 63, p. 464.

*Dunnett & Slack* for the petitioner.

A wife should not be compelled to wait till her mental suffering caused by her husband's misconduct has actually produced, or threatened bodily harm, before she is entitled to a divorce for intolerable severity. As is said by Newell on Divorce and Separation, §276: "The anguish of mind must have eaten through the flesh and exhibited itself in bodily disease, before there can be any legal evidence, of cruelty. But some women, like some men, have inherited from sturdy ancestors physical constitutions so robust,—that the woes of a Lear could not wear out the machinery, or obstruct the currents of physical life. Must such a woman suffer on forever, and only the weak, who faint at a gentle reproach, be relieved?" It is hoped that this Court, unhampered by precedents of its own, will take a more humane and consistent course. The courts of other states have blazed the way. *Barnes* v. *Barnes,* 95 Cal. 171; *Sylvis* v. *Sylvis,* 11 Col. 319; *Graft* v. *Graft,* 76 Ind. 136; *Carpenter* v. *Carpenter,* 30 Kan. 712; *Goodman* v. *Goodman,* 26 Mich. 417; *Whitmore* v. *Whitmore,* 49 Mich. 417; *Palmer* v. *Palmer,* 45 Mich. 150; *Waltermire* v. *Waltermire,* 110·N. Y. 183; *Smith* v. *Smith,* 87 N. Y. Sup. 137; *Straus* v. *Straus,* 67 Hun. 491; *Braun* v. *Braun,* 44 Atl. 1096; *Wagner* v. *Wagner,* 36 Minn. 239; *McMahon* v. *McMahon,* 9 Ore. 525; *Pinkard* v. *Pinkard,* 14 Tex. 356; *Bailey* v. *Bailey,* 97 Mass. 373; *Keley* v. *Keley,* 51 Am. Rep. 732; *Holyoke* v. *Holyoke,* 6 Atl. 928.

Condonation is always impliedly conditioned that the injury in question shall not be repeated and that the forgiven party shall in all other marital respects act as he should. *Langdon* v. *Langdon,* 25 Vt. 678; *Lillie* v. *Lillie,* 65 Vt. 109.

This Court will not interfere with the discretion of the court below in fixing the amount of alimony, unless it is satisfied that such discretion was abused. 17 Am. Dig. Col. 967; *Peck* v. *Peck,* 15 N. E. 12; *Bailey* v. *Bailey,* 76 Vt. 264.

There was no error in the admission of the evidence of libellant's indebtedness. That bore directly on the question of the amount of alimony to be allowed. *Boaring* v. *Boaring,* 71 S. W. 431; *Stutsman* v. *Stutsman,* 66 N. E. 908; *Edleman* v. *Edleman,* 104 N. W. 56; *Hendrick* v. *Hendrick,* 26 N. E. 768; *Gusman* v. *Gusman,* 39 N. E. 918.

ROWELL, C. J.    A divorce from the bond of matrimony was decreed in this case for "intolerable severity." The treatment found is, in substance, not any personal violence, but that the libellee repeatedly accused his wife of adultery with two certain men, which accusations were sometimes made when he and his wife were alone, sometimes when others were present, especially their adopted son, who was sixteen or seventeen years old, and sometimes to others when his wife was not present, and that he had used harsh and abusive language to her, and called her vile names.    It is found that there was no probable nor reasonable cause for the libellee to believe that his wife was guilty of adultery with either of those men, nor even of improper conduct with one of them, and that his accusations were groundless and false, and occasioned her "much mental suffering"; but that the libellee believed that improper relations existed between his wife and one of those men, and still believed so, but that this belief rested on no other foundation than his jealousy, arising, perhaps, from a certain transaction she had with that man, which, however imprudent on her part, did not justify the libelee's accusation of adultery with him.    As to the other man, the court was unable to find that the libellee believed the accusation after he investigated the matter, which he did soon after the time when he claimed the adultery was committed.    As to whether the "mental suffering" of the libellant injured her health, or might reasonably be expected to injure it, there is no finding.

The principal question is, whether the facts found make a case of "intolerable severity" within the meaning of those words as used in the statute.    The libellee's counsel contend that by the great weight of authority, both English and American, a false charge of adultery, made without reasonable or probable cause, unaccompanied by any act of personal violence, or any apprehension of such act, and unaccompanied by such injury to the feelings as to affect health, or to create a reasonable apprehension that it may affect health, does not constitute legal cruelty. The libellant's counsel say that the words, "intolerable severity," are not found in the divorce laws of any other state; that the language most commonly used is, "cruelty," "extreme cruelty," "cruel and inhuman treatment," and the like; that both courts and elementary writers seem to have found difficulty

in giving a satisfactory definition of any of these expressions, and that they are found so coupled with other expressions, held by courts to limit or to extend their meaning, that perhaps no general definition can be given; that some of the earlier decisions held that "extreme cruelty" meant personal violence; but that in more recent years that definition has been discarded as too narrow and limited, and that it is now held that "cruelty," "extreme cruelty," "cruel and inhuman treatment," and the like, may be established by any line of misconduct persisted in by the offending party to such an extent as to cause injury to the life, limb, or health of the other, or to threaten, or to create a danger of such injury; and that it is not regarded as necessary that such injury, present or threatened, should be the direct result of such misconduct, but that it is enough if produced by grief, worry, or mental anguish, occasioned by such misconduct.

We regard this as a substantially correct statement of the law of this subject as at present generally held, both in this country and in England. It accords with Mr. Bishop, when he says that as late as when he wrote the first edition of his "Marriage and Divorce," it seemed to be the prevailing judicial opinion that mental suffering had nothing to do with bodily ills; at least, that it did not so directly create those ills as to render the infliction of such suffering legal cruelty; but that now, under more enlightened physiological views, the legal doctrine has become settled everywhere, he thinks, that conduct that produces pain of mind is cruelty whenever, operating alone or in combination with something else, it creates a danger to the physical health. 1 Bish. Mar. Div. & Sep. §1563. And in §1565 he says that this doctrine, having been affirmed in this country, has become fully established in England, as shown by *Kelley* v. *Kelley,* L. R. 2 P. & D. 31, and on Appeal, *59.

But the libellant's counsel are not satisfied with the law as they say it is, because it is too narrow for a just and righteous administration of it in cases like this, in which, they say, the wife should not be compelled to wait till her mental suffering has produced or threatened bodily harm; and therefore they urge the Court, as it is not hampered by precedents of its own, to take a position more consistent with the interests of humanity, to the attainment of which, they say, the courts of some of the

other states have blazed the way. But in undertaking to follow the way said to be thus blazed, the same difficulty would be en-encountered that the counsel say attends the giving of a satisfactory definition of legal cruelty, and for the same reason, namely, the difference in the phraseology of statutes, held by the courts to limit or to extend their meaning. Mr. Bishop says on this subject that the statutes of a few of the states are in terms to invite a modification of the English rule, and cites the Civil Code of California as it was in 1885, which defined "extreme cruelty" as "the infliction of grievous bodily injury, or grievous mental suffering, upon the other by one party to the marriage." He goes on to say that some of those statutes permit divorce for excesses, cruel treatment, and outrages of a nature to render the living together of the parties insupportable, or employ other words of similar meaning; and that under them, mental suffering, without danger to the physical security, will suffice; or, on the other hand, that the statutes will be satisfied by blows alone. And he cites cases in Louisiana, Texas, Missouri, and Oregon, as coming under these "exceptional statutes," as he calls them.

The libellant's counsel refer to cases from all of these states, except Missouri, as showing the way they want us to take. They also refer to cases from some of the other states, and among them, to *Waltermire* v. *Waltermire,* 110 N. Y. 183. But that case is not with them. There it appeared that on one occasion the husband laid violent hands on his wife, led her to the door, threatened to knock her down, and struck at her twice; that on another occasion, falling to the floor from sickness, he said it was a pity she ever got up, and again said to her, "I shall be glad when you draw your last breath." He called her "all the bad names that belong to a bad woman," and accused her of adultery with different men in the neighborhood. The court said that these were the gravest circumstances that characterized his treatment as "cruel and inhuman," though there were others that made her life miserable, and rendered it unfit for her to live with him, and impossible for her to do so with any sense of self-respect or with any comfort. The court said that the ill-feeling of the husband towards his wife was manifested repeatedly, not by mere petulence or rudeness, but by a series of acts of personal violence, and a continued use of insulting lan-

guage, whereby he caused the abandonment of which he complained.

Nor does New York occupy the position we are asked to take, as shown by *Kennedy* v. *Kennedy,* 73 N. Y. 369. There the court said, in the language of Lord Stowell in *Evans* v. *Evans,* 1 Hog. Con. 35, that "mere austerity of temper, petulance of manners, rudeness of language, even occasional sallies of passion, if they do not threaten bodily harm, do not amount to legal cruelty." The court then went on to say that these things may cause discomfort, mental anguish and suffering, but, in the further language of Lord Stowell in that case, "the answer is that courts of justice do not pretend to furnish cures for all the miseries of human life." But the court said that threats of violence by a husband to his wife, of a character to induce a reasonable apprehension of bodily injury, and charges of infidelity, made in bad faith as auxiliary to, and in aggravation of, the threatened violence, are sufficient to constitute "cruel and inhuman treatment," within the meaning of the statute authorizing a limited divorce.

Counsel also refer to *Braun* v. *Braun,* 194 Pa. St. 287, 44 Atl. Rep. 1096. But that case is not to their purpose, for in Pennsylvania the cruel and barbarous treatment of the wife must be such as to endanger her life, and it must be taken that the jury found it to be of that character, else its verdict would not have been justified, as the court said it was.

Mr. Bishop suggests what he calls a fair and just way of judicial escape from what he thinks are some of the absurdities of the books, without violating the doctrine of *stare dicisis,* as that doctrine applies only to law, not to fact. He says that mental anguish, when deep and protracted, may well be deemed as dangerous to physical security as blows, and to occupy the same ground in the evidence of cruelty, and although this is a question of fact, that the court may as well take judicial notice of it as of the effect of blows. But he goes on to say, what makes against the idea of judicial notice, that if, in a particular case, it is the opinion of the court or the jury determining the fact, that the wife's health is in danger from ill conduct of the husband addressed primarily to the mind, she should have a divorce. 1 Bish. Mar. Div. & Sep. §1552.

In referring to *Bailey* v. *Bailey*, 97 Mass. 373, 381, he says that if what is there said was in the minds of all judges and juries when considering cases of that sort, it would lead us to be reconciled to the rule of law that prevents the infliction of mere mental suffering from constituting ground for divorce. In that case it is said that if it be supposed that the interpretation of the statute there given does not sufficiently provide for a class of cases where, though the abusive language or conduct of one party does not affect the health of the other, yet makes the life of the other so wretched and intolerable that a divorce ought to be granted on account of the cruelty, the answer is that such supposed case cannot actually exist, for deeply wounded sensibility and wretchedness of mind can hardly fail to affect the health. 1 Bish. Mar. Div. & Sep. §1566.

But this is not the position of the cases generally, and we are not prepared to adopt it. It is but recently, as we have seen, that the courts have come to think that mental suffering has anything to do with bodily ills; and it is too much to say that it is so certain that it does and will harm the body, and that this fact has, in so short a time, become a matter of such common knowledge, so known and notorious to all men, as Wigmore puts it, that it can be judicially noticed in all cases. There may be cases in which such notice may well be taken; as, where the facts and circumstances are so decisive of bodily harm, actual or apprehended, that there can be no difference of opinion about it. But in cases short of that, we think the substantive fact must be found before it can be said to exist.

Nor do we regard the case in hand of the decisive character mentioned. The libellant herself, fifty-one years old, and in ordinary good health for a woman of her age, did not seem to be particularly apprehensive of bodily harm from the treatment of her husband, for she continued to cohabit with him till they left the farm the first of November, 1904, and although they never again set up housekeeping and lived together as husband and wife, yet on various occasions they occupied the same bed when visiting relatives, and occasionally had sexual intercourse up to and including January 5, 1905, two days after which he left her, much against her earnest protest and wishes, and went to Massachusetts to live, whither she went to see him, but did not, because he fled to Rhode Island to avoid her. She wrote to

him, but got no answer. She saw him once, and tried to talk with him, but he would not speak to her nor see her. And up to the time this libel was brought, which was in June, 1906, the libellant desired to live with the libellee, and up to the time he left the State, she urged him to remain in Lyndon, hire a house, and live and cohabit with her as his wife.

We hold, therefore, that the essential fact of bodily harm, or of a reasonable apprehension of such harm, is not established, unless we presume in favor of the judgment that the trial court inferred that fact from those certified up. But we cannot well do that on this record, especially as it says that the court decided the case "upon the findings of fact," which seems to preclude, or to make doubtful at least, the idea that the court inferred the all-essential fact from those findings.

The libellee testified that he wanted his wife to have a divorce, and his counsel, in written suggestions for findings of fact, asked the court to find that he wanted his wife to have a divorce, but was unwilling she should have more than a third of what he was worth; that he was unwilling to imperil his creditors, or to be made insolvent, by paying her alimony. The libellant's counsel say that this was, in effect, asking the court to grant a divorce, but to make the alimony small, and that having got what they asked for in respect of the divorce, they cannot be heard to complain of the amount of alimony. The court does not say how it understood that request, nor whether its action was influenced by it or not. We think it should not be construed as an asking for a divorce at all events, but only on condition that the alimony should not be more than a third of what the libellee was worth. But it was more than all he was worth, saying nothing about his earning capacity, which was $40 a month at the time of trial.

The libellee claims condonation. But if there ever was any, it was nullified by his wilful desertion, which, if continued the requisite time, would ripen into a cause of divorce. *Langdon* v. *Langdon,* 25 Vt. 678; *Marshall* v. *Marshall,* 65 Vt. 238, 26 Atl. 900.

Soon after the libellee left the State and went to Massachusetts to live, the libellant, believing him to be insane because he accused her so of adultery, commenced proceedings against him in the probate court of the District of Caledonia, for the

appointment of a guardian over him on the ground of insanity. A guardian was appointed, and the libellee appealed to the county court, where the case was tried by jury in June, 1906, and after a long trial the jury found by special verdict that the libellee was non-resident when the proceedings were commenced, and was not insane as alleged. Thereupon the case was dismissed for want of jurisdiction. On that trial the libellee, by his own and other testimony, charged his wife with adultery the same as he had before, and that testimony was relevant to the issue. Shortly after that trial began, and before it closed, this divorce proceeding was commenced, on the trial of which the charges of adultery thus made in the guardian case were relied upon, with charges made before. As tending to show that the libellee was sane when he made those charges, and to show the disposition of the guardian case, the libellant offered in evidence the docket entries therein, which showed the findings of the special verdict, and the judgment of dismissal for want of jurisdiction. The libellee' objected to their admission because they were immaterial, and did not tend to show the sanity of the libellee; because the case was dismissed for want of jurisdiction; and because the special verdict was not *res judicata*. The objections were overruled, and the entries admitted, to which the libellee excepted. This was error. The probate court had no jurisdiction to appoint a guardian for the libellee, for he did not reside in its jurisdiction. Pub. Sts. 3141. Therefore the county court had no jurisdiction on appeal. *Adams* v. *Adams*, 21 Vt. 162; *Boyden* v. *Ward*, 38 Vt. 628, 632. Consequently the finding of the jury as to libellee's sanity was a nullity. But the libellant says that that finding did not harm the libellee, as, in the language of the exceptions, he "made no claims that he was insane at the times testified in the divorce suit." But we hardly think that cures the error, for the issue on which the finding was offered and received was a live issue throughout the case, as far as appears, and that finding was calculated to weigh with the court, and the court does not say it did not.

The libellee contends that his testimony in the guardian case as to his wife's adultery was privileged, as it was relevant and material, and therefore could not be shown here as ground for a divorce. This contention is sustained, for whatever a

party testifies to in court on trial of an action against him, if pertinent and material to the subject of inquiry, is privileged, and the occasion excludes the legal notion of malice. Within this limit, the protection is complete as against the other party, certainly, however false and malicious in fact the testimony. *Mower* v. *Watson,* 11 Vt. 536; *Clemmons* v. *Danforth,* 67 Vt. 617, 32 Atl. 626; *Hoar* v. *Wood,* 3 Met. 193; *Hastings* v. *Lusk,* 22 Wend. 410.

As bearing on the question of the libellant's character, and on the question of intolerable severity, the libellee offered to show that the libellant had a very wilful, unpleasant, and domineering disposition. The evidence was excluded, but the witness was allowed to give the language of the libellant, and to specify her acts, but not to characterize either. The libellant does not claim that this kind of evidence was not admissible, but that this was as far as the witness could go without invading the province of the trier; that the character of one's disposition is determined by his language and conduct, and cannot be otherwise indicated by a witness. Mr. Wigmore says that there are numerous cases that exclude, under the opinion rule, statements by observers involving sundry inferences as to another's state of mind, and even as to his own state of mind, while in other jurisdictions such testimony has been expressly sanctioned. But to show how baseless the exclusionary rulings are in the orthodox practice of the common law, he gives extracts from the annals of two generations of English trials. 3 Wig. Ev. §1963. Such testimony comes fully within the rule in this State, that when the witness has had personal observation, and the facts and circumstances that lead his mind to a conclusion are incapable of being detailed and described so as to enable any one but the observer himself to form an intelligent conclusion from them, the witness is allowed to add his opinion, or the conclusion of his own mind; as, in question of identity, handwriting, value, time, distance, insanity, affection, dislike, etc. *Clifford* v. *Richardson,* 18 Vt. 620; *Cavendish* v. *Troy,* 41 Vt. 99, 108. It was error, therefore, to restrict the testimony as it was restricted.

It was error to allow the libellant to show that she was owing $50 for summoning witnesses in the guardian case, and $395 for legal services therein. Those were debts for which the

libellee was in no way responsible, and not bound to pay. The same is true of the $25 she borrowed to pay the expenses of herself and their adopted son to Worcester, Mass., which we assume, although it does not appear, was when she went to find her husband. As to her indebtedness for keeping the libellee's horse, which she had to use, and for boarding their adopted son, enough does not appear to enable us to say whether they were proper for consideration or not. If they were necessitated because the libellee did not perform his duty in respect of those matters, they were proper for consideration in fixing the amount of alimony. But as a general rule, and regardless of circumstances, a husband should not thus be made to pay his wife's debts. It is unnecessary to determine whether the alimony is excessive.

The other questions, being of minor consequence and not likely to arise again as now presented, are not considered.

*Judgment reversed and cause remanded.*