## Eugene Clinton Winslow v. Katharine Holloway Winslow

[ 251 A.2d 419 ]

December Term, 1968

Present: Holden, C.J., Shangraw, Barney, Keyser, JJ., and Daley, C. Supr. J.

Opinion Filed February 11, 1969

Motion for Reargument Denied March 21, 1969

*John S. Burgess, Esq.,* for the Libellant.

*Fitts & Olson* for the Libellee.

**Shangraw, J.** This is an action of divorce brought on the ground of intolerable severity, under 15 V.S.A. §551(3), and also on the ground that the libellant has lived apart from the libellee for three consecutive years without fault on his part and that the resumption of marital relations is not reasonably probable. 15 V.S.A. §551(7).

Partial hearing was held in the Windham County Court on October 20, 1967 and continued to the final hearing held on November 27, 1967. Findings of fact were filed January 29, 1968. A decretal order was issued April 2, 1968 granting a divorce to the libellant on each of the foregoing requested grounds. Libellee has seasonably appealed to this Court for review.

█ Notice of appeal from the decree brings the whole case, including all questions litigated in the court below which affect the final decree, if they are briefed, to this Court for review. *Century Indemnity Co.* v. *Mead,* 121 Vt. 434, 436, 159 A.2d 325.

The Findings of Fact reveal that the parties were married in Kingston, Rhode Island on May 28, 1942 and have five children. During 1964 the libellant had been on the faculty of the University of Rhode Island for eighteen years starting as an instructor in chemistry and eventually becoming a full professor of chemistry.

In .1964 the libellant took a one-year leave of absence from the above university to accept the position as President of Windham College in Putney, Vermont, which office he now holds. In the summer of 1964 he taught at the University of Rhode Island summer school and commuted to Putney week-ends until August 15, 1964 when summer school ended, during which time he came to Putney and stayed during the week and returned to his home in Rhode Island week-ends. In August of 1964 the marital relationship of the parties ceased.

On September 9, 1964 the libellant returned to Rhode Island and on behalf of the libellee was served with papers for separate maintenance returnable in Washington County, Rhode Island. This action is now pending. Libellee is presently residing with four of their five minor children in Kingston. The oldest child, Holly is married.

The libellee first contends that the finding of the trial court that "the libellee treated the libellant at divers times with intolerable severity" is not supported by the findings and the evidence.

■ The well-established rule in this jurisdiction is that to constitute intolerable severity the acts and conduct of the offending spouse must be of such aggravated nature that the health of the innocent spouse is threatened to the point of present and imminent danger. *Mathewson* v. *Mathewson,* 81 Vt. 173, 179, 69 A. 646; *Souther* v. *Souther,* 103 Vt. 48, 52, 151 A. 504; *Gilbert* v. *Gilbert,* 123 Vt. 200, 202, 185 A.2d 460.

■ The critical question is, therefore whether there was any misconduct on the part of the libellee and, if so, did it cause or threaten injury to the life, limb, or health of the libellant, either as a direct result of such misconduct, or produced by grief, worry, or mental distress occasioned thereby. See *Souther* v. *Souther, supra,* 103 Vt. page 52, 151 A. 504.

By Finding 13 the court found "That difficulties in the marriage first occurred in the spring of 1964 and as a result thereof the libellant became tense, upset, nervous, had stomach pains and jumpy, but since the parties have separated the libellant's health has improved and he is full of life as of this time and is no longer nervous, upset or has stomach pains."

The court also found by Finding 23 "That prior to August 1, 1964 the marriage of the parties was unhappy; the parties had had arguments and the libellee had threatened and pretended in 1964 to commit suicide, and were incompatible."

While the court found that the libellant was nervous, upset and had stomach pains, it did not find that libellant's condition was the result of any acts or misconduct of the libellee. The court only found it was the result of difficulties in the marriage.

There is no finding pointing up the nature of the difficulties, what caused them, or by whose fault they arose. These difficulties which apparently resulted in an unhappy marriage could, for ought that appears, just as well have been the conduct or fault of the libellant as of the libellee. An unhappy marriage is not, without more, so severe in and of itself that jeopardy to health is an inevitable consequence.

Aside from what is said in Finding 23 there are no findings of any marital misconduct on the part of libellee. A threatened and pretended suicide by the libellee is not an act directed toward or against the libellant but rather to herself. In addition the court did not find that this pretention had any adverse physical affect on the libellant or was even believed by him. To the contrary, the evidence showed that he was aware that the pills being taken by his wife were harmless.

Further, he testified "I don't think she had any suicidal intention at all."

There is no finding or suggestion in the findings of any bodily harm to the libellant, either actual or threatened, or any mental suffering, caused by any misconduct of the libellee.

■ The burden was on the libellant to establish persistent conduct, or fault, on the part of the libellee leading to intolerable severity. Such proof was a necessary ingredient to support the claim of intolerable severity. Essential affirmative findings are lacking on this vital issue and are necessary to warrant a decree of divorce on that ground. *Mathewson* v. *Mathewson, supra,* 81 Vt. at page 178, 69 A. 646.

■ Moreover, the findings fall short of showing that libellant's health was "threatened to the point of present and imminent danger." The only finding is that the libellant "became tense, upset, nervous, had stomach pains and jumpy."

After the separation the libellant's health improved and he was "no longer nervous, upset or had stomach pains." But this finding, as said in *Gilbert* v. *Gilbert, supra,* 123 Vt. at page 202, 185 A.2d at page 461 "does not mean the prior cohabitation had threatened the health of the innocent spouse to the point of present or imminent danger."

Apart from being nervous and upset there are no findings, or evidence, to show an impairment, actual or threatened, to the libellant's health, or of any mental suffering caused by the libellee's conduct. The fact and circumstances are indecisive of an actual or apprehended bodily harm.

To overcome the failure of the trial court to make a determination of an actual or threatened impairment of health favorable to the libellant, the facts and circumstances must be so decisive of such danger to the libellant's health that there can be no difference of opinion that such a result will ensue. *Gilbert* v. *Gilbert, supra,* 123 Vt. at page 202, 185 A.2d 460; *Crossman* v. *Crossman,* 124 Vt. 127, 129, 197 A.2d 818.

On the basis of the record presented the court erroneously granted a divorce on the ground of intolerable severity.

The libellee's second assignment of error relates to the conclusion reflected in the decree that the parties have lived separate and apart for a period of three years without fault on the part of the libellant. Libellee urges that such separation was occasioned by reason of the fault of the libellant, and not on her part.

■ The court found that on or about August 1, 1964 the parties separated and ceased to live together as husband and wife. One of the three essential elements necessary to support a decree on this ground is that the living apart was without fault on the part of the libellant. *Krupp* v. *Krupp,* 126 Vt. 511, 513, 236 A.2d 653. The remaining two elements are found by the court but there is no specific finding that the libellant was without fault for the living apart.

The findings show that on August 1, 1964, the libellant requested the libellee to give him a divorce which request he later renewed by letter. On August 15, 1964, the libellant discussed his marriage problems with his daughter and stated he didn't want the marriage to continue. Libellant came to Putney on August 15, 1964 and told the libellee not to come there because it might jeojardize his job as president of the college. He wanted his wife to become more independent. On September 9, 1964, the libellee requested the libellant not to come back to their house in Rhode Island.

While the parties lived together in Rhode Island they were social friends and acquaintances of a Mr. and Mrs. Beckman. The libellant had a friendly and social relationship with Mrs. Beckman. The Beckman marriage came to an end in June, 1964. After Mr. and Mrs. Winslow had separated the libellant visited Mrs. Beckman in New Hampshire and gave her "a ring or rings." He also stated that he is in love with Mrs. Beckman, and would like to marry her.

■ The libellant had the burden of affirmatively proving that the living apart was without fault on his part and must procure a finding to this effect. *West* v. *West,* 115 Vt. 458, 460, 63 A.2d 864; *Krupp* v. *Krupp, supra,* 126 Vt. page 514, 236 A.2d 653.

There is no specific finding that the living apart was without fault on the part of the libellant. The libellee didn't bring an action for separate maintenance in Rhode Island or inform her husband not to return to the home there until over a month after he had told her he wanted a divorce and that she could not come to Putney to live with him.

The libellant refers to the service of the legal process on September 9 being a traumatic experience for the libellant and the cause of their separation. But this argument is contrary to the finding of the court that the parties separated on August 1, 1964, and thereafter ceased to live together as husband and wife. Thus, the argument that

the legal action brought by the libellee was the "actual cause of the separation" is unwarranted.

The court found that the libellee during the summer of 1964 became nervous, upset, couldn't eat or sleep, had headaches and lost approximately 20 pounds of weight." From ought that appears in the findings the libellee's condition was the result of the actions or conduct of the libellant. The findings fail to pinpoint the cause. It can be fairly inferred that the libellant's friendly and social relationship with Mrs. Beckman had some bearing on the libellee's condition.

■ The findings do not establish the reason for, or the basis of, the separation adverse to the libellee. Neither do they establish that her conduct was the real cause of the breakdown of this marriage nor that the living apart is without fault on the part of the libellant. In this situation the decree granting a divorce on the second ground must be reversed.

■ Libellee complains of the inadequacy of attorney's fees and expenses allowed by the trial court at $625.00. She sought a larger sum. The court had wide judicial discretion in this matter. *Shaw* v. *Shaw,* 99 Vt. 356, 359, 133 A. 248. From what appears in the record, we cannot say, as a matter of law, that this allowance is so unreasonable and unjust as to amount to an abuse of discretion of the trial court. This portion of the decree must stand.

■ Neither party was decreed custody of the minor children. The court however directed the payment by Mr. Winslow of $700.00 monthly for the benefit of the libellee and minor children. Ordinarily, unless the divorce is granted, the trial court has no power or jurisdiction to grant permanent alimony. *Loeb* v. *Loeb,* 118 Vt. 472, 485, 114 A.2d 518; *Prosser* v. *Warner,* 47 Vt. 667.

Libellee's divorce proceeding in the State of Rhode Island remains pending. Under date of November 16, 1964 an intelocutory decree was issued therein directing that Mr. Winslow pay his wife $675.00 monthly for her support and that of the minor children. Mrs. Winslow was also allowed counsel fees of $500.00.

■ In view of the foregoing, and our decision to disaffirm the decree of divorce on each of the grounds requested, we consider that the decree relating to support of the libellee and minor children should be vacated and set aside.

*That portion of the decree directing payment of attorney's fee and expenses of $625 is affirmed. The decree is reversed as to all other issues contained therein. Cause remanded.*