## Nina Marie Flood v. John M. Flood

[346 A.2d 194]

No. 161-74

Present: Barney, C.J., Smith, Daley and Larrow, JJ. and Keyser, J. (Ret.), Specially Assigned

Opinion Filed October 7, 1975

*Welch and Cleveland,* Rutland, for Plaintiff.

*Thomas J. Pressly, Esq.,* of the office of *J. Fred Carbine, Jr.,* Rutland, for Defendant.

**Smith, J.** The Rutland Superior Court granted the plaintiff, Nina Marie Flood, a divorce on July 19, 1974, on the ground of intolerable severity. It made additional findings of fact and conclusions of law on August 5, 1974. The defendant has duly taken his appeal here from the findings, conclusions, and order of the court. He presents two questions to this Court; first, did the plaintiff establish that the defendant was guilty of intolerable severity, and second, is the award of the trial court for support inconsistent on its face and the cause of irreparable harm to the defendant?

The parties were married in September, 1960. The lower court found that in January, 1973, the defendant, while under the influence of intoxicating liquor, struck the plaintiff and the parties separated. Plaintiff brought her divorce petition on January 17, 1973, but on the first day of November, 1973, both parties moved for a continuance of at least six months on the ground that they were attempting a reconciliation. They did reconcile in June, 1973, and have lived together under the same roof up to the date of the hearing below. Plaintiff admits having had sexual relations with the defendant during that

period, although she "indicates that said relations were usually under force and while the defendant was using intoxicating beverages." Finding 12.

The lower court also found that during the period of the marriage, at various times, the defendant had assaulted the plaintiff. The only recent altercation, during which the state police were called, was approximately two months before the July, 1974, hearing.

The case of *Winslow* v. *Winslow*, 127 Vt. 428, 251 A.2d 419 (1969) has been cited by both parties, as well as the trial court, as authority for the definition of intolerable severity. *Winslow* states: "The well-established rule in this jurisdiction is that to constitute intolerable severity the acts and conduct of the offending spouse must be of such aggravated nature that the health of the innocent spouse is threatened to the point of present and imminent danger." *Id.* at 431.

 "The critical question is, therefore, whether there was any misconduct on the part of the libelee and, if so, did it cause or threaten injury to the life, limb, or health of the libelant, either as a direct result of such misconduct, or produced by grief, worry, or mental distress occasioned thereby." *Id.* The *Winslow* Court then went on to point out, "The burden was on the libelant to establish persistent conduct, or fault, on the part of the libelee leading to intolerable severity. Such proof was a necessary ingredient to support the claim of intolerable severity." *Id.* at 432.

What might be termed the ultimate findings of the lower court upon which it based its conclusion of law that the plaintiff had been treated with intolerable severity by the defendant, we now quote:

> 15. That during the period of marriage at various times, the defendant has assaulted the plaintiff and has physically abused the plaintiff leaving marks upon her body and as a result of such treatment, the plaintiff is nervous, loses sleep, and is still under the care of a medical doctor.
>
> 16. That because of the aforesaid treatment, the resumption of marital relationship is not reasonably probable.

490

The evidence, taken in the light most favorable to the plaintiff, was that the defendant had a problem with alcohol, struck her on one occasion prior to their separation in January, 1973, and that another altercation took place between them some two months prior to the hearing. A sister of the plaintiff testified that she had seen marks on plaintiff's body as a result of the abuse given her by the defendant and that her sister "was extremely nervous". The plaintiff's own testimony was, "well, I am under a doctor's care for a nervous condition and, you know, restlessness, I can't sleep at night, this sort of thing, I mean this has been coming on for two or three years that I have been under the doctor's care. . . ."

■ The trial court was the sole weigher of the evidence presented at the hearing. *Wetmore* v. *Wetmore*, 129 Vt. 583, 584, 285 A.2d 711 (1971); *Gallant* v. *Gallant*, 129 Vt. 16, 19, 270 A.2d 593 (1970). Its conclusion of law was that the health of the plaintiff had been threatened to the point of present and imminent danger.

The defendant argues, however, that other evidence concerning reconciliation and condonation defeats, as a matter of law, the grant of a divorce on the ground of intolerable severity in this matter. He advances this argument notwithstanding his recognition that condonation as an absolute defense to a divorce action has been abolished. 15 V.S.A. § 563. In essence, this argument is the reverse of one advanced in *Davidson* v. *Davidson*, 111 Vt. 68, 72, 10 A.2d 197 (1940), where it was contended that there were so many acts of intolerable severity that condonation was impossible as a matter of law.

The evidence presented by both parties below was that the marital relationship continued until the date of the hearing. In fact, it was the testimony of the defendant, not contested by the plaintiff, that he was under the impression that the action had been discontinued, and that only when he was notified a week prior to the hearing that the cause would be heard did he realize that the divorce libel was still pending.

There was other undisputed evidence that, after the reconciliation in June of 1973, the defendant turned over his paychecks to the plaintiff, who continued to act as the financial manager of the household until the time of the hearing. During this period the defendant also repaired the home and

built a swimming pool there for the use of the children. The couple entertained others at their home, and the plaintiff drove the defendant to work each day.

Both the finding and the evidence would establish condonation if such conduct still constituted a defense or bar to a libel for divorce. But while condonation is not now a defense in a libel for divorce, there still remains the burden upon a plaintiff seeking a divorce on the grounds of intolerable severity to establish persistent conduct, or fault, on the part of the defendant leading to intolerable severity.

The lower court found that only one altercation had arisen between the parties for more than a year before the divorce action was tried, and that the parties had lived together during that time, engaging in intercourse and entertaining friends. Within that period, defendant gave plaintiff his paycheck, and he worked to improve the family home. These facts in combination do not, as a matter of law, establish persistent bad conduct, or fault, on the part of the defendant. Additionally, the fact that the plaintiff allowed the divorce action to continue for nineteen months, while the parties apparently lived amicably together, during which time the defendant believed that the action had been dropped, can lead only to the conclusion that the defendant did not engage in persistent conduct that would establish intolerable severity. Nor did the testimony of the plaintiff and her sister that the plaintiff had been under a doctor's care for two or three years for nervousness and sleeplessness establish that such condition was caused by claimed misconduct of the defendant. The judgment of divorce must be reversed.

Moreover, we think the exceptions by the defendant to the support order made by the court are well taken. As head lineman for a power company he was, and is, often subject to call for work outside his regular working hours. For such services he receives overtime pay, varying from week to week, and the amount of this additional compensation, of course, depends upon the number of overtime hours worked.

This support order increases the support payments the defendant must pay to the plaintiff when he receives overtime pay, and does so by percentages disproportionate to the in-

crease in overtime pay received. Thus, the order becomes punitive in nature, in that his burden of support increases at a steeper rate than his wages do, and, in effect, penalizes him if he makes overtime pay. We note also that it requires a weekly computation of support payments due, based upon his overtime earnings, and the percentage applicable thereto.

*The judgment below is reversed. The case is remanded for a new hearing, with permission to the plaintiff to amend her libel, if she be so advised.*