GRANITE CITY COOPERATIVE CREAMERY ASSOC'N INC.
*v.* B AND K CHEESE COMPANY, INC.

(63 A2d 193)

November Term, 1948.

Present: MOULTON, C. J., BUTTLES, JEFFORDS and CLEARY, JJ., and
ADAMS, Supr. J.

Opinion filed January 5, 1949.

*Finn & Monti* for the plaintiff.

*Lawson & Paterson* for the defendant.

MOULTON, C. J.   In this action the plaintiff seeks to recover a balance claimed to be due for skim milk and cream sold and delivered to the defendant during the period between April 4, 1945, and August 8, 1945, in the amount of $2249.99.   The writ was dated April 3, 1946, and served on April 9, 1946.   The trial was by the court and the judgment was for the plaintiff to recover the sum of $529.67, with interest of $47.67, in all $577.34.   The cause is here upon the plaintiff's exceptions.

The plaintiff's specifications contain items showing sales of skim

milk to the defendant to the amount of 3,100,355 pounds, at the following prices per hundred weight: April 1945, .6566; May, .6575; June, .6699; July, .6699; August, .6599, the entire sum being $20,-540.95. There is another item for hauling the milk at 5 cents per hundred weight, amounting to $1550.18. The third item is for two jugs of cream, charged at $43.86. The total is $22,134.99, against which there are credits consisting of payments on account, including a payment of $500 made after the action had been brought, in the sum of $19,885.00, leaving the balance claimed of $2249.99.

The material findings of fact are these: On April 11, 1946, after a conversation by telephone regarding a settlement of the controversy, the attorneys for the respective parties reduced their offers to writing. (These writings, which consist of letters are quoted elsewhere in this opinion, and the findings as to their contents need not be recited here.) The defendant conceded that the amount of milk charged to it, as shown by the semi-monthly statements sent to it by the plaintiff was correct, and that it received the milk in question, but claimed a misunderstanding as to the price, which it contended should be .5910 per hundred weight for April milk, .5918 per hundred weight for May milk, .5993 per hundred weight for June and July milk, and .5933 per hundred weight for August milk. The plaintiff asserted that these figures were based upon 90 pounds of skim milk, and that in order to ascertain the price for 100 pounds, they should be divided by 9 and multiplied by 10. The defendant conceded that it received two jugs of cream, for which it should be charged $43.86. The court found that the total charges made by the plaintiff to the defendant amounted to $24,277.75; that a certain credit item of $3,863.08, appearing on the last statement sent to the defendant, should be allowed and that, after adding this to the conceded payments on account, the total credit was $23,748.08, leaving a balance due of $529.67, upon which the plaintiff was entitled to interest. The findings also state that the negotiations between the attorneys as shown by their letters of April 11, 1946, should not be binding upon the parties, and that a concession made by the defendant's attorney in open court concerning the item in the plaintiff's specification of $1550.18 for hauling should not be taken against the defendant because he was expecting to be charged for skim milk only at prices ranging from .5910 to .5993.

There were many exceptions taken by the plaintiff to rulings made during trial and to the findings, to the refusal to comply with

requests for findings and to the judgment. We shall not consider them one by one for in one way or another they raise only a few material issues.

The first in order is the construction placed by the Court upon the letters that passed between the attorneys, written after the action had been brought, which the plaintiff insists constitute a binding stipulation as to the basis upon which the judgment should have been rendered. Both letters having been introduced in evidence, we quote from each, as material.

The letter on behalf of the plaintiff contains the following: "Confirming the agreement made over the telephone today, it is agreed that the plaintiff shall be entitled to judgment for the amount of skimmed milk delivered to the defendant at the price fixed by the Milk Market Administrator in the Boston area, during the period that the milk was delivered, plus five cents per hundred weight for each hundred weight of skimmed milk delivered. In consideration hereof, it is agreed that the credit of August 31, 1945, of $3,863.08 is not to be given to your client as the foregoing is to fix the entire price to be paid by your client for the skimmed milk delivered to it. Your client, of course, is to pay in addition for the items that do not constitute skimmed milk, as I understand some items cover cream and possibly other matters. These are to be paid for as charged. Against the aforesaid sums, your client is to be credited for all payments actually made. If these figures show that the plaintiff is entitled to any balance due it, it is to have judgment unless the defendant pays the amount determined to be due, plus costs. . . . This agreement is to settle and compromise the matters involved in this suit and this letter is to have the effect of a stipulation in the case."

The letter of the defendant's attorney is couched in this language: "Confirming our conversation had today with respect to settlement of the case of Granite City Cooperative Creamery, Inc. vs. B & K Cheese Co. Inc., we have computed the amounts to be charged on the basis of our talk, namely: at the rate of the Administrator's price per hundred, as in effect for the months involved, plus 5¢ per cwt. for hauling, and the following is an itemization of the results of our computation:

| Pounds | Admr. Price | Hauling | Total |
|---|---|---|---|
| 6985.75 | .5910 | .05 | $4477.87 April |
| 10826.10 | .5918 | .05 | 6948.03 May |
| 9782.10 | .5993 | .05 | 6351.52 June |
| 3292.46 | .5993 | .05 | 2137.76 July |
| 11720. | .5933 | .05 | 75.39 Aug. |

19990.57

Total charges $19,990.57
Total credits   19,385.00

605.57

According to our computation it would appear that Mr. Kurz owes you $605.57 . . . P. S. It is understood that Mr. Kurz will pay the taxable costs. This letter was dictated before your letter of the same date was received. The terms of settlement therein outlined are agreed upon."

Certain evidence was introduced by the plaintiff tending to show the circumstances attending the exchange of the letters between the attorneys for the respective parties, which was not contradicted, but which the defendant argues need not have been accepted as conclusive by the trial court. We spend no time in the consideration of this contention, because, aside from all extrinsic evidence, the letters taken by themselves are sufficient to establish an agreement between the parties. The postscript to the letter of the defendant's attorney by its own language makes it entirely clear that it was written and signed after receipt of the letter on behalf of the plaintiff, with full knowledge and understanding of the contents of that document. It contains an express and unequivocal acceptance of the terms therein proposed as a basis of settlement. The charge of five cents per hundred weight for hauling, and the question of the claimed credit of $3863.08 were thereby eliminated as issues in the case; the only matter left for future determination was the Milk Administrator's price for the milk, whatever it might be, and an anticipation on the part of the defendant that this would be found to be in accordance with its contention, does not detract from the binding effect of the stipulation. See *Borley* v. *McDonald,* 69 Vt 309, 312, 38 A 60. The statement in the findings

that the parties should not be bound by these letters, which is a conclusion of law and not a finding of fact, is erroneous.

■ In view of what has been said it is unnecessary to consider a concession concerning the item of five cents per hundred weight for hauling, made by the defendant's attorney in open court. But it may be observed that the statement of the Court that this concession was not binding, which is also a conclusion of law, cannot be upheld. Not once, but twice, in response to categorical questions by the Court, the defendant's attorney replied that there was no question concerning this charge, saying that the only issue was as to the price of the milk. Nowhere in the transcript does it appear that the concession was withdrawn or modified, and there was no application for leave to retract it. No evidence was introduced to controvert the fact. The trial proceeded upon the issue of the Milk Administrator's price. Even though the defendant and his attorney, during the negotiations prior to the trial, expected that the price to be charged would be less than the amount claimed by the plaintiff, such expectation could not have been maintained in view of the figures set forth in the specification. It was after these figures had been brought to his attention, and to the attention of his client, that the defendant's counsel made the concession. There is nothing in the record to show that it was not made absolutely and without qualification, for the express purpose of dispensing with formal proof of one of the facts in issue, and thus it was a judicial admission and a binding waiver of the issue. *Raptis* v. *Alexander*, 104 Vt 203, 158 A 73; *Hall* v. *Fletcher*, 100 Vt 210, 212, 136 A 388, and cases cited; *Coolidge* v. *Taylor*, 85 Vt 39, 53, 80 A 1038.

The uncontradicted evidence was that the prices per hundred weight as claimed by the defendant, varying from .5910 to .5993, which appeared in monthly bulletins as to prices for Class 2 milk issued by the Milk Market Administrator's office, were based upon ninety pounds of skim milk, and that although the Administrator issued no prices for skimmed milk per hundred weight, such prices were to be ascertained by dividing the prices of Class 2 milk by 9 and multiplying the result by 10, or, as the equivalent, divide by .9, which would result in each instance in the price set forth in the plaintiff's specifications: that is, the April price of .6566; the May price of .6575; the June and July prices of .6699; and the August price of .6599.

■ Two witnesses testified upon this point. The first of whom,

Mrs. J. B. Eastman, the treasurer and bookkeeper of the plaintiff corporation, was a stockholder therein, owning with her husband 16 shares of the total par value of $160. There were, in all, more than 700 stockholders and the outstanding stock amounted, in par value, to between $70,000 and $80,000. Passing the question whether her interest, both financial and as officer and employee, in the result of the litigation was to be taken into consideration by the trial court in weighing the probative value of her testimony, it is enough to say that the other witness, John L. Carten, Jr., the Administrative Assistant to the Milk Market Administrator for the Boston area, was entirely disinterested, and the transcript discloses no circumstance from which an inference adverse to his testimony can be drawn. He was not cross examined. The general rule is that where a credible witness testifies directly and positively to a fact and is not contradicted and there is no circumstance shown from which an inference against the fact testified to can be drawn, that fact may be taken as established. *Neill* v. *Ward,* 103 Vt.117, 160, 153 A 219; *Brown* v. *Maryland Casualty Co.,* 111 Vt 30, 35, 11 A2d 222, 129 ALR 1404. This rule is applicable here. The prices charged in the plaintiff's specification should have been allowed and it was error to fail to do so.

The basis of the amount for which the trial court gave judgment was a statement of account sent by the plaintiff to the defendant after the mercantile dealings between the two had ceased and before the negotiations for settlement. This statement, which was received in evidence, is a summary of the previous semi-monthly statements and lists the amounts due from sales for each period of two weeks from April to August, 1945. It also contains the conceded credits of the sums actually paid during that time, and the credit of $3863.08. The semi-monthly statements, however, make it appear that the milk was billed at prices of .782 and .783 per hundred weight. It is not claimed by either party that these prices were those set by the Milk Administrator. The evidence tended to show that there was included in them an agreed extra charge of 12½ cents per hundred weight, which charge was represented by the credit of $3863.08, allowed on condition that an immediate payment of the account should be made, which was not complied with. As we have seen, this credit was eliminated by the stipulation between the attorneys. There is no basis in the record upon which the prices charged in the semi-monthly statements and

in the summary of account above mentioned can be found to be the Milk Administrator's prices, differing as widely as they do from those relied upon by either party. To render judgment upon these figures, in the light of the stipulation and the uncontradicted evidence in the case, was error.

*Judgment reversed, and judgment for the plaintiff to recover the sum of $2249.99, with interest thereon from September 30, 1945, with costs.*