## Lyle C. Sargent et al v. Albert T. Gagne et al

[147 A2d 892]

January Term, 1958

Present: **Cleary, Adams, Hulburd and Holden, JJ. and Shangraw, Supr. J.**

Opinion Filed November 5, 1958

Motion for Reargument Denied December 18, 1958

*Black, Plante & Ellison* for the plaintiffs.

*Finn & Davis* for the defendants.

**Holden, J.** This proceeding is in equity. The controversy centers on the ownership of rights to a water source, referred to as the School Spring, and its connecting aqueduct. The spring and pipe line are located on the defendants' farm. The plaintiffs seek injunctive relief against the defendants' interference with the plaintiffs' right to take water from the spring by the existing aqueduct and from interference with the plaintiffs' repair and maintenance of the pipe line.

The defendants have denied the plaintiffs' claim of ownership. They affirmatively allege there had been an abandonment of the property by the plaintiffs' predecessors before the plaintiffs acquired their farm. The defendants further allege they have acquired the property by deed and by adverse possession under a claim of right for a period in excess of twen-

ty-five years. In their cross-complaint the defendants, too, seek equitable relief and damages.

The opposing parties own neighboring farms in Royalton. The disputed School Spring is located in the defendants' pasture some five rods northerly and downgrade from a second spring referred to by the defendants as the "Home" or "Gagne Spring." There was evidence that there were other springs in the same general area that are not in use or usable.

In support of their conflicting claims of title, certified copies of the instruments of conveyance in the respective chains of record title were offered by both parties. These exhibits were received without objection.

On October 1, 1853, David and Silas Williams entered into an agreement with Charles Clapp, the plaintiffs' predecessor in title. This agreement, recorded November 30, 1871, in Book R of the Royalton Land Records, recites: "That in consideration of ten dollars paid by the said Clapp to the said David and Silas R. Williams, the said Clapp is to have the privilege of taking and continuing to take from a certain spring situated some six rods, more or less, nearly north from where the said David and Silas R. Williams now take water to convey to his own house as much water as will naturally run through a half-inch pipe or tube to convey the same to the present dwelling house of said Clapp, and to have the privilege of digging across the lands of said David and Silas R. Williams to convey the same to the present dwelling house of said Clapp, and in case of necessity to repair the same." (Plaintiffs' Exhibit 13).

The first deed appearing in the defendants' chain of title was derived from Joseph W. Waldo, 2nd. September 19, 1876, Waldo conveyed the present farm of the defendants to Henry Pierce. Following the description of the property conveyed there appears: "Except a spring on said premises from which water is taken by aqueduct to the Clapp farm, so called which I reserve." The grantor engaged to warrant and defend the granted premises against all lawful claims "except said spring." (Defendants' Exhibit J.)

October 26, 1879, Joseph W. Waldo, 2nd, by warranty deed, undertook to convey a spring to the plaintiffs' predecessor

in title, Philip Sewall. The deed sets forth: "in consideration of twelve dollars paid to my full satisfaction by Phillip Sewall of Royalton—grantee, by these presents, (I) do freely give, grant, sell, convey and confirm unto the said Sewall and his heirs and assigns forever, a certain spring of water in Royalton—described as follows, viz: Being a certain spring of water on land now owned by Henry Pierce and the same spring that I reserved in my deed to said Pierce, dated Sept. 19th, 1876 and is the same spring from which the water is taken by aqueduct to said Sewall's house, formerly the Charles Clapp house, also is the same spring that Silas R. Williams and David Williams leased to Charles Clapp Oct. 1, 1853, which lease is recorded in the Royalton Land Records, Nov. 30, 1871 in Book R. I am not to be held liable at any time for any damage that may arise to the land in consequence of digging or relaying said aqueduct." (Plaintiffs Exhibit 11.)

The conveyance by Henry Pierce to the next succeeding grantees in the defendants' line of title, Newton, Roy and Hattie Prescott and Sarah Wells, dated May 23, 1907, specifically states: "excepting a spring on said premises from which water is taken by aqueduct to the Clapp farm, so-called which I reserve which is now used by the Sewall farm." (Defendants' Exhibit I.)

The Henry Pierce farm, less a parcel of land conveyed by Sarah Wells to the Town of Royalton for a schoolhouse in 1914, passed by mesne conveyances to the Gagne family, and thence to the defendant Albert T. Gagne in 1923. The school property was after acquired by the defendants in 1953. The plaintiffs obtained title to their adjoining farm through various intermediate grants which purport to convey the granted premises "with all privileges and appurtenances thereof"; however, no specific mention is made of any spring in the plaintiffs' chain subsequent to the grant from Waldo.

To identify the spring mentioned in the Waldo grants as the School Spring, the witness Nelson G. Lamson was called as a witness for the plaintiffs. Lamson testified without contradiction in the evidence that his father acquired and lived on a farm adjoining the plaintiffs' farm in 1902 and that he and his father worked on the plaintiffs' farm in 1902 and 1903.

This witness testified that in 1903 he and Sewall, then the owner of the plaintiffs' farm, cleaned out the lower spring which was located four or five rods- from the present Gagne Spring. He testified that in 1903 water from this spring was piped into the cellar of the Sewall farmhouse. He identified the spring which they visited in 1903 as the School Spring that is in dispute. He testified the spring was used in connection with the Sewall farm until the farmhouse burned in 1923.

After Lamson's testimony was given, the defendants called a witness Taylor who had been familiar with the Sewall farm since 1904. He testified, "I don't know much of what the situation was before 1904. I came in 1904—from then on I knew." He testified that at some time prior to 1923 he had helped Mr. Sewall dig up another and different pipe line to a well on the Sewall's sugar place and at a different location from the School Spring. He further testified that he was familiar with the School Spring and had visited it on many occasions; that he had never seen a pipe line leading from the School Spring nor did he know of Sargent or his predecessors in title ever having used the School Spring.

When the plaintiffs moved on the Sewall farm in 1935, water was piped to the farm buildings from a well on a hill across from the farmhouse. Except for the occasional filling of milk cans at the School Spring, no use was made of this water source by the plaintiffs prior to 1948.

With the history of the premises standing thus, the plaintiffs requested the chancellor to find that their predecessors in title leased a spring, together with the right to maintain an aqueduct therefrom to the plaintiffs' premises from the defendants' predecessor in title on October 1, 1853. The chancellor was further requested by the plaintiffs to find "that the plaintiffs' predecessor in title did on, to wit, October 26, 1878, purchase said spring from the defendants' predecessor in title. (See, Plaintiffs' Exhibit 11, which is found as a fact.)" and that the plaintiffs' predecessors in title used the water from the spring until the dwelling house on the property burned, about 1922-1923.

The plaintiffs also requested a finding to the effect that their farm, purchased by them May 3, 1939, was known as

the Sewall Farm. The court was requested to include in its findings the subject-matter of the several plaintiffs' exhibits received at the hearing, including Plaintiffs' 11 and 13. These requests were denied and adequate exceptions were preserved by the plaintiffs.

The findings are entirely silent on the origins of the title to the School Spring, and no attempt is made by the findings to identify the plaintiffs' farm or the School Spring.

In substance, the findings state only these facts: The defendants Gagne are the owners of the Henry Pierce Farm or Prescott Farm. The Sewall School property was formerly a part of the Pierce Farm and was conveyed by Sarah A. Wells to the town of Royalton with a provision that if the school property was ever sold the owners of the Pierce Farm were to have the first opportunity to repurchase. The Gagne Spring is piped to the defendants' home. The School Spring is piped to the Sewall School and from there to plaintiffs' home. In 1938 the defendant Albert T. Gagne gave the school board of the town of Royalton oral permission to take water from the Gagne Spring for the school for so long as it was used as a schoolhouse. The defendant Gagne assisted in the digging and laying of the pipe. The plaintiff took no part in the laying of this aqueduct.

By findings 7, 8 and 9 it is determined that in 1948 the plaintiff, Lyle Sargent, with the consent of the school directors, removed the intake of the aqueduct from the Gagne Spring and installed it in the School Spring thereby changing the source of water supply for the Sewall School from the upper, to the lower spring. It appears that Sargent tapped into the school aqueduct at the schoolhouse to bring water from the School Spring to his home. Permission was not sought nor obtained from the defendants to accomplish this connection. The defendants had personal knowledge of this use of the water from the school aqueduct by the plaintiffs but made no objection until September 15, 1951.

In June, 1949, the Sewall School was closed. During the following September the plaintiff, Lyle Sargent, disconnected the water supply to the schoolhouse but left the connection of the pipe line to his home.

On June 23, 1951, the Sewall School property was sold by the town at public auction to the defendants after a public announcement, heard by the defendants, to the effect that "no water went with the school.". The plaintiffs' use of the water from the School Spring was interrupted by a break in the line. The defendants prohibited the plaintiffs from going on the school property to repair the line. The findings report the language of two receipts given the plaintiff, Lyle Sargent, by the town. The first receipt is for used pipe, in the main line of the Sargent Homestead water system; the second for the purchase of used pipe and cement tile.

The concluding finding is No. 15: "The Court is unable to find that the plaintiffs have established ownership of either the Gagne spring or the School spring or any other permissive use of water from the School spring other than that drawing from the arrangements with the School Board of the Town of Royalton, whereby they were allowed to hook on to the Sewall School lines described in Finding 7, 8, and 9."

The final decree provides:

"1. That the defendants are enjoined and restrained from interfering with the license of the plaintiffs to take such water from the "School Spring" through the present aqueduct as is measured by the amount of water in excess of that used for school purposes during the period of 1948 to 1949 when the Sewall School was in operation.

2. That the plaintiffs are enjoined and restrained from interfering with the defendants' ownership of the "School Spring" and restrained from interfering with the taking by the defendants through the present aqueduct of an amount of water equivalent to that used for school purposes during the period of 1948 to 1949 when the Sewall School was in operation.

3. That the plaintiffs are to restore forthwith the aqueduct connection to the Sewall School building, so-called, as it was in 1948 and 1949 at their own expense.

4. That the defendants are to pay the costs of these proceedings as taxed by the Clerk.

The defendants appeal from the adjudication of the decree that the plaintiffs are licensees with the right to take water from the system. The plaintiffs appeal from that aspect of the decree which denies their ownership of the School Spring. The plaintiffs also present exceptions to the findings and to the failure of the Court to comply with their numerous requests to find.

The defendants contend that the plaintiffs failed to establish that the spring mentioned in the early deeds is the School Spring. The record of the hearing below establishes the identity of the School Spring to be the spring conveyed to the plaintiffs' predecessor in title Sewall and excepted from the grant to the defendants' ancestor Pierce by their common grantor Waldo. The spring property conveyed in the plaintiffs' chain of title, and reserved and excepted from the defendants' farm, is described by reference to the water rights which related to the Clapp farm. The grant to Sewall specifically refers by date, book and page to the Williams-Clapp agreement of 1853, and identifies the spring there mentioned with the very spring reserved and excepted from the defendants' farm. The subject spring is located by reference to a second spring that stands as a monument to the disputed property. The location is given on the defendants' farm, six rods, more or less, nearly north from where the defendants' predecessor took water.

Between the original parties there clearly was no ambiguity in the description. And the original description was continued by reference in the subsequent grants.

The uncontroverted proof locates the School Spring on the ground in juxtaposition, conforming to the recorded description. The School Spring is located on the ground some five rods north from the Gagne Spring that has provided water to the defendants' farm as long as the defendant Albert Gagne could remember. The School Spring meets the call of the original conveyance.

If the description in the recorded early grants might be equally applicable to the location of two different springs situated on the defendants' farm, thereby rendering the record description ambiguous, it was incumbent upon the defendants to make this latent ambiguity known in the proof.

■ A latent ambiguity develops when it is made to appear that a description is equally applicable to two or more objects or persons. See *Wead* v. *St. Johnsbury and Lake Champlain Railroad Co.*, 64 Vt 52, 58, 59, 24 A 361; *Northern Trust Co.* v. *Perry*, 105 Vt 524, 527, 168 A 710, 94 ALR 7. Here the record gives rise to no ambiguity that can remove the School Spring from the description contained in the conveyances from the common grantor of both parties.

■ Furthermore, the disputed spring and its identifying monument are both located on lands owned and controlled by the defendants. If from their knowledge of their own property, they had information of two different springs on their farm which would fit the call of the deeds, it was for them to produce evidence of such fact in order to escape the inference that such a coincidence does not exist. When evidence peculiarly within the knowledge and reach of a party is not forthcoming, an inference unfavorable to such party may be drawn from the failure to produce it. *State* v. *Teitle*, 117 Vt 190, 211, 90 A2d 562; *Pacific Lumber Agency* v. *National Aircraft Materials Corp.*, 108 Vt 10, 17, 182 A 192; *In re McCabe's Will*, 73 Vt 175, 176, 50 A 804.

All this appears without resort to any possible conflict in the oral testimony of the witness Lawson, or his counterpart Taylor.

■ The exception of the School Spring, in the grant from the grantor Waldo to the defendants' predecessor in title Pierce in 1876, had the legal effect of carving out and separating this water source from the defendants' farm. *Haldiman* v. *Overton*, 95 Vt 478, 481, 115 A 699; *Dee* v. *King*, 77 Vt 230, 239, 59 A 839, 68 LRA 860.

■ The fact that the deed from the defendants' immediate grantors fails to mention the exception does not enlarge their rights to the disputed property. The right conveyed to the owners of the plaintiffs' farm was mentioned in various intermediate conveyances in the defendants' chain, and as late as 1907. This constituted effective notice of the existence of the easement. *Nelson* v. *Bacon*, 113 Vt 161, 170, 32 A2d 140. The grantee Pierce acquired no interest in the School Spring.

The defendants, as his successors in interest, have no record title to the disputed spring. *Haldiman* v. *Overton, supra,* at 481.

■ The right to the spring, excepted by Waldo from the defendants' farm in 1876, was thereafter specifically conveyed to the plaintiffs' grantor Sewall in 1878. The rights defined are inseparable from the real property they benefit. They are annexed to the "Sewall's house, formerly the Charles Clapp house." The subsequent grants of the Sewall farm are made "with all the appurtenances thereof." The rights to the School Spring passed to the plaintiffs as appurtenant to the farm itself. *Haldiman* v. *Overton, supra,* 95 Vt at 480, 482, 115 A at 700, 701.

Abandonment and adverse possession were affirmatively pleaded by the defendants. They rely on these issues to support their claim of ownership.

■ The burden of proof that there had been an abandonment of the easement previously granted was on the defendants who asserted the claim. *Sabins* v. *McAllister,* 116 Vt 302, 309, 76 A2d 106; *Nelson* v. *Bacon, supra,* 113 Vt at 171, 32 A2d at 146. The defendants refer to the testimony of the witness Taylor, mentioned above, as evidence of non-user. His testimony on this point was not settled by the findings, for the court made no finding on this fact. In any event, an easement created by deed is not extinguished by non-user alone, no matter how long continued. *Scott* v. *Leonard,* 119 Vt 86, 99, 119 A2d 691; *County of Addison* v. *Blackmer,* 101 Vt 384, 390-391, 143 A 700; *Percival* v. *Williams,* 82 Vt 531, 538, 74 A 321; *Mason* v. *Horton,* 67 Vt 266, 271, 31 A 291. To effect abandonment, non-use by the dominant owner must be accompanied by a conclusive and unequivocal present intent to relinquish ownership. *Scott* v. *Leonard, supra,* 119 Vt at 99, 119 A2d at 698; *Sabins* v. *McAllister, supra,* 116 Vt at 309, 76 A2d at 110; *Nelson* v. *Bacon, supra,* 116 Vt at 172, 32 A2d at 146. The findings are silent on these essential facts. The defendants' brief fails to indicate any evidence in the record, capable of supporting the claim that the plaintiffs or their predecessors intended to relinquish their ownership of the School Spring.

The findings are equally lacking in any statement from which the appellate court can infer a successful adverse possession by the defendants. Adverse possession, sufficient to extinguish an easement previously granted, must be the equivalent of an ouster of the dominant owner. Where an ouster is asserted by the landowner who has held possession for or with his cotenant, the presumptions are against him. *Scott* v. *Leonard, supra*, 119 Vt 86, 102, 119 A2d 691. In order for the defendants to sever the plaintiffs from their express grant, the defendants are required to prove, and procure findings to establish that the plaintiffs knew of the defendants' claim to exclusive ownership of the disputed water source. The claim asserted by the defendants was required to be accompanied by such acts of possession as would exclude the plaintiffs and effectively oust them from the granted premises. *Scott* v. *Leonard, supra,* at 102; 119 A2d at 700; *Sabins* v. *McAllister, supra,* 116 Vt at 307, 76 A2d at 109; *Vermont Marble Co.* v. *Eastman,* 91 Vt 425, 465, 101 A 151. The findings determine that the plaintiffs used the School Spring from 1948 until immediately before this litigation commenced without objection from the defendants. Then the exclusion immediately produced the present litigation.

The defendants preserved no exception to the findings nor to the court's failure to find on the issues of abandonment and adverse possession. In the absence of proper exception, we cannot go deeper than the findings stated to cure the omissions. *Hackel* v. *Burroughs,* 117 Vt 328, 329, 91 A2d 703; *Wool* v. *Larner,* 112 Vt 431, 26 A2d 89; *Conn Boston Co.* v. *Griswold,* 104 Vt 89, 99, 157 A 57. In this connection, however, the evidence referred to in the defendants' brief and the record, considered as a whole, are insufficient to provide the support necessary for either claim.

The deeds upon which both sides in this controversy rely establish the early grant of the spring to the plaintiffs' predecessor, Sewall. The extrinsic evidence received confirms the identity of the spring conveyed to be the School Spring here in dispute. See *Walsh* v. *Farrington,* 105 Vt 269, 276-277, 165 A 914; *Wead* v. *St. Johnsbury & Lake Champlain Railroad*

*Company*, 64 Vt 52, 58-59, 24 A 361. The plaintiffs were entitled to an express finding that the School Spring was conveyed by the common grantor of both parties to the plaintiffs' predecessor in title, Sewall. The uncontroverted evidence required a finding that title to the disputed spring passed by intermediate conveyances to the plaintiffs. The plaintiffs' exceptions to the failure of the court to find as requested are sustained. The same considerations support the plaintiffs' exceptions to that part of the decree which adjudged the defendants the owners of the School Spring. The decree must follow the result demanded by the requested findings. *In re Watkins Estate*, 114 Vt 109, 130, 41 A2d 180, 157 ALR 212; *Alburg* v. *Rutland Railway Corporation*, 119 Vt 476, 488, 129 A2d 506. The plaintiffs' exceptions to the decree are sustained.

Although the plaintiffs' title to the disputed spring is established, the defendants challenge the plaintiffs' right to take water from the spring through the present pipe line. It is contended that they are confined to the course of the original aqueduct that was in use at the time of the early grants. The course of the original conduit does not appear in the findings nor in the record.

■ It is the general rule that a way, once located, cannot be changed thereafter without the mutual consent of the owners of the dominant and servient estates. *Ritchey* v. *Welsh*, 149 Ind 214, 48 NE 1031, 1033, 40 LRA 105; *Sibbel* v. *Fitch*, 182 Md 323, 34 A2d 773, 774; 28 CJS, Easements, §84, p. 763; 17A Am Jur, Easements, §103, p. 713. See also *Lafleur* v. *Zelenko*, 101 Vt 64, 71, 141 A 603; *Kinney* v. *Hooker*, 65 Vt 333, 337, 26 A 690. Mutual consent to a relocation, however, may be implied from the acts and acquiescence of the parties. *Tripp* v. *Bagley*, 74 Utah 57, 276 P 912, 69 ALR 1417, 1427; *Bagley* v. *Petermeir*, 233 Ia 505, 10 NW2d 1, 3; *Larned* v. *Larned*, 11 Metcalf (Mass) 421, 423; 1 Thompson, Real Property, §516, p. 626; 28 CJS, Easements, §84, p. 763; 17A Am Jur, Easements, §103, p. 714. See also *Stockwell* v. *Fitzgerald*, 70 Vt 468, 474, 41 A 504.

■ The original grant of the subject easement to the plaintiffs' predecessor does not limit the taking to the aqueduct

then in place. As long as the present taking is not an enlargement or extension of the right originally granted, the taking is lawful. *Davidson* v. *Vaughn*, 114 Vt 243 at 247, 44 A2d 144; *Arnold* v. *Farr*, 61 Vt 444, 447, 17 A 1004.

The chancellor found that the plaintiffs constructed a pipe line from the school house to their farm property in 1948. The findings further determine that the defendants knew of this construction and of the plaintiffs' use of the school aqueduct to bring the water to the plaintiffs' property. No objection was made to the new location and use until some three years after the construction was accomplished. The system was used along the new way without question or complaint until 1951. On these facts, the defendants must be treated as having acquiesced in whatever change in location may have resulted. *Stockwell* v. *Fitzgerald, supra,* 70 Vt at 474, 41 A at 506.

It also appears from the findings that the present aqueduct was installed and used in 1948 as the result of a series of licenses. The Town of Royalton drew water from the School Spring in consequence of the acts and permission of the plaintiff. It obtained license from the defendants to lay the line on their land, south of the school property, to gain access to the School Spring. Reciprocal to the license given by the plaintiffs, is the correlative license, from the town to the plaintiff, to construct a new line across the school land to connect with the aqueduct, then in place, on the school property. The findings report that all parties either participated or were fully cognizant of the entire arrangement. The several licenses were followed by new construction, with accompanying expenditure of labor and materials. As to all parties, the licenses became executed and irrevocable. *Clark* v. *Glidden,* 60 Vt 702, 711, 15 A 358; *Phillips* v. *Cutler,* 91 Vt 262, 265, 100 A 40; *Dutton* v. *Davis,* 103 Vt 450, 453, 156 A 531.

The subsequent purchase of the Sewall School property by the defendants could not have the effect of accomplishing a revocation of the earlier executed license from the defendants' grantor to the plaintiffs. A license, irrevocable by the licensor, cannot be withdrawn by his purchaser who has notice of the license. *Dutton* v. *Davis,* 103 Vt 450, 453, 156 A 531; *Phillips*

v. *Cutler, supra*, 91 Vt 262, 100 A 40; *Wheaton* v. *Cutler,* 84 Vt 476, 483-484, 79 A 1091.

The defendants' brief refers us to the case of *First National Bank of St. Johnsbury* v. *Laperle*, 117 Vt 144, 150, 86 A2d 635, 30 ALR2d 958, to support their position that the plaintiffs' license across the school lands was extinguished by the conveyance of the school property to the defendants. This conveyance did not accomplish a unity of ownership of the dominant and servient estates. Ownership of these estates remained separate and unchanged. Unity of ownership of these interests is essential to the termination of an easement by merger. *Wilder* v. *Wheeldon*, 56 Vt 344, 351; *Plimpton* v. *Converse*, 42 Vt 712, 717. The transfer of the school property carried with it the benefits and burdens of the mutual and executed licenses previously given of which the parties had notice. *Phillips* v. *Cutler, supra*, 91 Vt at 264, 100 A at 41; *City of Barre* v. *McFarland & Boyce*, 82 Vt 310, 312, 73 A 577.

In support of their claim to exclusive ownership of the present aqueduct the defendants seek to invoke the law of fixtures. It seems quite apparent that the pipes were annexed to the land with the mutual intent of the parties that the line would serve their respective interests in the land. See *First National Bank* v. *Nativi*, 115 Vt 15, 18-19, 49 A2d 760; *Hill* v. *Wentworth*, 28 Vt 428, 436-437. However that may be, the central issue in the law of fixtures is the right of removal of the disputed property from the freehold. That issue is not present in this controversy. Neither of the parties assert the right to remove the pipes from the soil. The plaintiffs and the defendants alike lay claim to exclusive rights to the pipe line, in place on the land. Neither the holding in *Powers v. Dennison*, 30 Vt 752, 755, as to the right of a licensee to remove fixtures, nor the law of fixtures generally, has any application to the facts and issues before us on this appeal. The mutual rights of the parties as licensees override any right to the pipe as a fixture.

The plaintiffs have established their right to equitable relief to protect their ownership and enjoyment of their property in the School Spring through the existing aqueduct. Their relief should not be limited to the excess of water used for

school purposes at the Sewall School from 1948 to 1949. The defendants are entitled to equitable relief to preserve the reciprocal license afforded to their predecessor in title to draw water from the School Spring by way of the existing conduit.

*Paragraphs 1 and 2 of the decree are reversed. Paragraphs 3 and 4 of the decree are affirmed. Cause remanded for amendment of the decree in accordance with the views expressed in the opinion. Let the plaintiffs recover costs in this court.*

*Plaintiffs' motion for reargument denied. Let full entry go down, in order that injunctive relief may be granted to both parties as provided in the final paragraph of the opinion.*

Note—An opinion in this cause was originally handed down at the March Term, 1958. Limited reargument was allowed at the September Term, 1958, resulting in a modification of the original opinion and entry order.