### Barbara H. Crossman v. Lyle P. Crossman

[197 A.2d 818]

December Term, 1963

Present: Holden C. J., Shangraw, Barney and Smith, JJ. and Hill, Supr. J.

Opinion Filed February 4, 1964

*Theodore Corsones* for the libelant.

*Angelo J. Spero* for the libelee.

**Smith, J.** This is an appeal from an order dismissing the wife's libel for divorce in proceedings before the Rutland County Court. The action was founded on the claim of intolerable severity. While the libelee was represented by counsel at the hearing in county court, the record discloses that such counsel presented no witnesses in behalf of the libelee, did not cross-examine the libelant or her witnesses, and made only a statement relative to the libelee's payment of support money in the course of the proceedings. It is also noted that although counsel for the libelee has entered an appearance in the appeal to this Court, no brief has been filed here for the libelee. Under such circumstances the proceedings must be regarded as uncontested on the part of the libelee.

The findings of fact below established that the parties were married on December 29, 1961, and lived in Rutland and Mendon until they separated on or about June 1, 1962. A child was born to them on August 2, 1962.

Trouble started between the parties shortly after the marriage, with the libelee finding fault with the meals prepared by the libelant and eating many of his meals with his mother, with whom he spent a considerable part of his time. Libelee had a quick temper, slammed

things around, and used profanity in the presence of his wife, child and others.

He was a user of intoxicants, but the lower court was unable to find that the use of such intoxicants on his part contributed to the marital troubles of the parties, despite the testimony of the libelant that it contributed to her nervous condition. The court also found that at some time after the child was born the libelee hit the libelant on the legs, leaving marks.

The lower court stated that the libelant testified that the conduct of the libelee made her nervous, and that she consulted a physician about her condition. However, the court declared that it was unable to find from the "believable evidence" that the conduct of the libelee caused injury or threatened injury to the physical health of the libelant or that it resulted in her suffering mental distress. The libel was dismissed on the ground that intolerable severity had not been established within the definition of the law.

It is libelant's contention here that the court erred in not finding intolerable severity because of mental cruelty, and also was in error in not finding intolerable severity because of physical cruelty in the findings of fact.

We are presented with the same problem on both the libelant's contentions before us. No affirmative findings of actual or threatened impairment to either the physical or mental health of the libelant by reason of the misconduct of the libelee have been made by the lower court. An affirmative finding on either or both of these questions is essential to warrant the granting of a decree of divorce on the ground of intolerable severity. Only when facts and circumstances shown by the record before us are so decisive of actual or threatened danger to the libelant's health that there can be no difference of opinion that such a result will ensue can we overcome this failure of the trial court to make a determination of this issue favorable to the libelant. *Gilbert* v. *Gilbert,* 123 Vt. 200, 202, 185 A.2d 460; *Mathewson* v. *Mathewson,* 81 Vt. 173, 182, 89 Atl. 646, 18 L.R.A., N.S. 300.

In our consideration of the facts and circumstances before us we cannot invade the province of the trial court to whom is given the sole determination as to the weight of the evidence, the credibility of the witnesses, and the persuasive effect of the testimony.

12 V.S.A. §2385, *Gilbert* v. *Gilbert, supra,* p. 202. Our rule is that in an uncontested action, which for all practical purposes is the one now before us, a trial court is not bound to believe uncontradicted testimony, for the trier has a broad latitude in determining what evidence is worthy of belief, and its findings should be read accordingly. *McKinney* v. *Kelley,* 120 Vt. 299, 308, 141 A.2d 660.

It is evident from the tone of the findings of fact before us that the credibility of the witnesses and the persuasiveness of their testimony weighed heavily with the court below. The words "the court is unable to find from the believable evidence" does not infer that there was no evidence as to the impairment of her mental or physical health on the part of the libelant, but it does mean that in the trier's judgment the credible testimony did not produce a preponderance of evidence upon this subject sufficient for a finding to be made to this effect. See *Strong* v. *Strong,* 123 Vt. 243, 246, 185 A.2d 924; *McClary* v. *Hubbard,* 97 Vt. 222, 238, 122 Atl. 469.

The transcript before us discloses that with but one exception all the evidence relative to the misconduct of the libelee and its effect upon the libelant came from the libelant herself. Unfortunately, as in many uncontested divorce cases, the answers of the witness were often elicited by the asking of leading questions. It may be understandable why counsel in uncontested cases resort to a manner of questioning of witnesses which would be quickly and successfully objected to in matters of real contest, for expediency if for no other reason. But, to an experienced trier of fact, such questioning, which often is little more than a statement of fact by counsel acquiesced in by the witness, detracts from the weight of the testimony given, and may raise doubts as to the credibility of a witness who must be led to an inevitable answer.

The evidence of the libelant was that she became a "nervous wreck" because of the conduct of the libelee. However, in response to a question from the court she stated that this condition came into being at a time when she first "started going" with the libelee, presumably at some time prior to marriage. Although she testified that she received "nerve pills" from a doctor, at a time when she was pregnant, no medical testimony was offered as to her condition, nor was there evidence that such condition caused loss of sleep or

appetite to a degree sufficient to injure her health, or that this condition had improved since her separation from the libelee.

The evidence of the libelant as to actual physical suffering as a result of the conduct of the libelee was that he had struck her on the legs on different occasions. On one such occasion, it being the only one specified as to date, the libelant testified as to having black and blue marks. No evidence appears that as a result of any of these occurrences the libelant suffered pain, or that she was in fear because of the libelee's conduct, at the time of the claimed infliction of injuries, or that she was in apprehension of the future because of them.

While a different trier of the facts, with the same evidence, might have accorded great weight to the testimony on intolerable severity offered by the libelant, this is not of concern to this Court. Our concern is only whether the facts and circumstances produced below, and which we have related here, are so decisive of actual or threatened danger to the libelant's health that there can be no difference of opinion on such result. The facts and circumstances here are not so decisive, and we cannot supply the essential findings of actual or threatened danger to the libelant's health which the court below failed to make.

Our entry must be: *"Order Affirmed."*