## Edward B. Brown v. Alexander L. Evarts

[258 A.2d 471]

No. 14-68

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed June 3, 1969

Motion for Reargument Denied October 7, 1969

*Mikell & Stuart*, Burlington, for plaintiff.

*Black & Plante*, White River Junction, for defendant.

**Smith, J.** The plaintiff, Edward B. Brown, seeks by his action in equity in the Essex County Court of Chancery to compel specific performance on the part of the defendant, Alexander L. Evarts, to buy certain premises now owned by the plaintiff on the lake shore of Little Averill Pond in Essex County. Although this action in equity was brought in the Essex County Court of Chancery it was heard by agreement of the parties by the chancellor at the Windsor County Court House in Woodstock, Vt., on Oct. 2, 1967.

All the testimony given before the Court of Chancery was by the plaintiff and his one witness, then Miss Alice DeCesaris, and all exhibits offered were also those introduced by the plaintiff. Defendant did not take the stand or offer any evidence in support of his position in the matter.

The judgment of the chancellor was for the defendant, which judgment also had the effect of removing the injunction imposed by the Windsor County Court on the defendant from proceeding with his action in that court for a return of the money he had paid to the plaintiff as a down payment on the purchase price of the property.

The findings made by the chancellor below, omitting those to which exceptions were taken, disclose the following situation. The plaintiff, owner of a large tract of lake frontage on Little Averill Pond, made an oral agreement with the defendant to sell the defendant a lot comprising 300 ft. of said frontage at an agreed purchase price of $15,000.00, with an agreed down payment from defendant to plaintiff of $5,000.00, in July, 1964. This amount was paid by the defendant to the plaintiff in two checks, one for $500.00, bearing the notation "partial payment for 300' of shoreline property on Little Averill Pond", and a later check for $4500.00, both paid before August 1, 1964.

Although plaintiff testified that he was not able to find a letter written by the defendant to the plaintiff between July 8 and August 1, 1964, both the plaintiff and a Miss DeCesaris, who were the only witnesses in the case, testified that the defendant notified the plaintiff that he wished his attorney, Henry Black, to draw up the deed and requested

the plaintiff to send his original deed, which was from the Brown Company, a Maine corporation, as well as a description of the area to be conveyed to Attorney Black. This was done by the plaintiff, who included in his letter to Attorney Black a rough drawing of the property to be sold, as well as certain restrictions relative to the disposal of sewage and commercial use of the property which plaintiff desired to have included in the deed. The letter was mailed on July 29, 1964. During August, 1964, the plaintiff and the defendant met on the property and marked out the three hundred foot frontage to be conveyed to the defendant with cairns of stones. Later in the same month, the defendant and his family camped out on the property.

On October 2, 1964, Attorney Black wrote to the plaintiff, which letter, in substance, stated that he had received insufficient information to prepare a deed, that his client was unwilling to accept at least some of the proposed restrictions and that the defendant "would be perfectly willing to abandon the transaction if you wish to return his deposit of $5,000.00."

We now come to a series of findings made by the chancellor, most of which were excepted to by the plaintiff, and which are the crux of the matter before us.

The chancellor first found that upon the receipt of the letter from Mr. Black, the plaintiff, in the presence of Miss DeCesaris and within her hearing, telephoned Mr. Evarts, the defendant, but in the next finding the chancellor states that he is unable to find that the plaintiff inquired of the defendant as to his intentions or objections to the purchase. (F. 32 and F. 33)

In F. 34, however, the chancellor finds: "In the presence of Miss DeCesaris, the plaintiff stated to the defendant over the telephone that if there were any restrictions or conditions . . . which were not acceptable to the defendant, he, the plaintiff, was willing to delete them from the agreement."

In the next finding, (F. 35), the chancellor, using that phrase so dear to finders of fact, stated that he was "unable to find" that in response to plaintiff's telephone statement that the defendant replied in substance that he would not buy the property or accept the deed "under any circumstances."

It was the undisputed evidence of the plaintiff and his witness that this was the reply of Mr. Evarts after the plaintiff had agreed to withdraw all restrictions. In fact, no evidence of any kind was offered by the defendant in the cause below, who rested immediately after the close of plaintiff's evidence.

The chancellor was confronted on this matter of the telephone conversation with evidence that was undisputed. Plaintiff and his witness not only testified as to the waiving of any conditions that he previously might have sought in the deed by the plaintiff, but that in reply the defendant would not accept a deed to the property under any circumstances. The chancellor found that the evidence of the plaintiff was believable relative to that part of the conversation in which plaintiff waived his proposed restrictions. But he did not find that the evidence of the plaintiff relative to the reply of the defendant that no deed would be accepted "under any circumstances" believable. Upon this critical issue the chancellor equivocated by stating "he was unable to find."

> "The general rule is that where a credible witness testifies directly and positively to a fact and is not contradicted and there is no circumstance shown from which an inference against the fact testified to can be drawn, that fact may be taken as established." *Granite Creamery* v. *Cheese Company*, 115 Vt. 408, 413, 63 A.2d 193.

Defendant cites us *Crossman* v. *Crossman*, 124 Vt. 127, 197 A.2d 818, an uncontested divorce case, in which it is stated that "in an uncontested action a trial court is not bound to believe uncontradicted testimony, for the trier has a broad latitude in determining which evidence is worthy of belief and its finding should be read accordingly."

But the present case was not uncontested. In fact, the companion action brought by the defendant against the plaintiff in the Windsor County Court of Chancery for the return of his down payment proves quite the contrary. Further, in the *Crossman* case the court used the words "the court is unable to find from the believable evidence." No such words are used in the case before us.

In effect, the chancellor found believable the evidence of the plaintiff and his witness as to what was said by them in the telephone conversation with the defendant, but refused to find that the testimony of the same witnesses was credible on the statements made by the defendant during the same conversation. Their testimony was direct and positive and it was not contradicted during their cross-examination, or other testimony, facts or circumstances. "The general rule is that where a credible witness testifies distinctly and positively to a fact and is not contradicted, and there is no circumstance shown from which an inference against the fact may be drawn, the fact may be taken as established, and a verdict directed on such evidence." *Neill* v. *Ward,* 103 Vt. 117, 160, 153 A. 219.

The chancellor was in error, in view of the uncontested evidence before him, and upon which his findings as a matter of law should have been based. The further effect of this error also had a vital effect upon the claim of the defendant that plaintiff never tendered the defendant a deed as he was called upon to do. The tender of a deed after the statement of the defendant that he would not purchase the property "under any circumstances" would have called upon the plaintiff to have performed a useless act, which the law does not require. *Hambleton* v. *Aja Granite Co.,* 96 Vt. 199, 203, 118 A. 878. It follows that the finding of the chancellor that the plaintiff was not "ready, willing and able to deliver a deed" (F. 27), was in error.

The chancellor also found (F. 38) that "the parties never reached an agreement as to a description of the premises of the specific reservations or exceptions to be included therein." Again, we have undisputed evidence, as well as a finding of the chancellor to that effect, that the parties jointly marked the lakeshore boundaries of the lot with cairns of stones. As far as any stipulations to be included in the deed, the chancellor also found (F. 34) that plaintiff explicitly agreed that any restrictions or conditions requested by him from the defendant could be deleted from the deed in the telephone conversation the plaintiff held with the defendant immediately after receiving the letter from Attorney Black mailed on October 2, 1964.

The sketch and description of the premises to be conveyed to the defendant sent to Attorney Black by the plaintiff on

6

July 29, 1964, a part of Exhibit 7, received in the case, gives the following description:

"I am selling three hundred (300') of shoreline measured along the highwater mark to Al Evarts of Windsor. The land is approximately midway between my house on the lake and Elmont Jackson's camp. The center of this piece of property lies on the top of a small point jutting out into the lake and extends approximately 150' along the shoreline in both directions from this point. In depth the lines will extend from the extremities of the shore frontage directly back in a straight line approximately 200' to a lumber road, which is the principal access road to this area."

The road referred to is described in the deed from Brown Company.

The deed from Brown Company to the plaintiff of June, 1961 (Plf. Ex. 1) refers to a graveled road, located on the premises of the grantor and others "to whom an easement and right-of-way may be granted, for the purpose of gaining access to the premises herein granted," as one boundary of the property.

■ The findings disclose that the three hundred foot lake frontage had been marked by the parties themselves. The description submitted by the plaintiff then calls for lines from such marked positions be extended "straight back", in other words, in right angles from such positions until the property to be deeded terminates at the road which gives the right of way to the premises. "If the description of land is sufficiently certain to enable the vendee to find and examine it, it is sufficient to justify specific performance of the contract." 49 Am.Jur. Specific Performance, Sec. 115.

It follows that the plaintiff's exception to Finding No. 38: "There is no evidence in the case tending to show that the parties did ever reach an agreement as to a description of the premises here involved or the specific reservations or exceptions to be included therein" is not supported by the evidence, and is in error.

It was the contention of the defendant, and the court so found, that the letter sent by the plaintiff to Attorney Black on July 29, 1964, was never communicated to the defendant

so that he was without knowledge of the proposed description of the property, and the then proposed restrictions on its use, at the time he joined with the plaintiff. in marking two of the boundaries of the property with the cairns of stones in the middle of August. Such finding could well be pivotal on the question of whether the parties had reached agreement on the boundaries of the land to be conveyed.

But our law has been firmly established since *Abell* v. *Howe,* 43 Vt. 403, that notice to the attorney will be presumed to be notice to the client. Also, see 7 C.J.S. Attorney and Client, Sec. 69, p. 584. The chancellor should have so found as a matter of law, there being no evidence to the contrary, and Finding No. 38 was in error.

The defendant briefs his claim here that the letter from the plaintiff to Attorney Black on July 29, 1964, in which the plaintiff requested certain restrictions placed in the deed, including one to allow him to re-purchase the property was a counter proposal of the plaintiff, which was refused by the defendant. But the findings show that it was in August,. some time after the receipt of this letter by the attorney for the defendant that plaintiff and defendant met on the property and marked out the shoreline boundaries.

It was not until October 2, 1964 that plaintiff received a letter from the attorney for the defendant in which certain objections to the description given of the property, as well as to granting the plaintiff an option to repurchase were set forth. The letter contains the statement "Alex indicated that insofar as he was concerned he would be perfectly willing to abandon the transaction if you wish to return his deposit of $5,000.00 to him." While the letter does express a disagreement with some of the restrictions proposed by the plaintiff, it indicates merely a willingness to end the whole transaction on the part of the defendant, if the deposit which had been made by him with the plaintiff was returned.

Only after the plaintiff had telephoned the defendant,. offering to waive all the proposed restrictions did the defendant, according to the undisputed testimony, state to the plaintiff that he would not accept a deed of the property from him under any conditions.

██ The undisputed evidence of the plaintiff established good and sufficient cause for specific performance. *First National Bank of St. Johnsbury* v. *Laperle*, 117 Vt. 144, 148, 86 A.2d 635. The facts essential to this relief were neither disputed nor denied and each was made the subject of a valid request to find, which was duly presented to the chancellor. In this posture of the case, an equivocal statement by the chancellor that he is "unable to find," without further explanation is not an acceptable basis for dismissing the complaint. In the presence of valid requests to find, according to uncontradicted evidence, the decree must follow the result demanded by the requested findings. *Sargent* v. *Gagne*, 121 Vt. 1, 12, 147 A.2d 892; *Alburg* v. *Rutland Railway Corporation*, 119 Vt. 476, 488, 129 A.2d 506; *In re Estate of Watkins*, 114 Vt. 109, 130, 41 A.2d 180.

*The entry in this cause is "Reversed and Remanded for the purpose of allowing a new judgment order to be made in accordance with the views expressed in this opinion."*