Gregory Supply Co. v. Calacci, No. 585-03 CnC  (Katz, J., Aug. 11, 2004)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT                                           SUPERIOR COURT
Chittenden County, ss.:                               Docket No. 585-03 CnCiv


GREGORY SUPPLY CO.

v.

ERIC CALACCI and
ANNIE CALACCI


FINDINGS OF FACT,
CONCLUSIONS OF LAW
AND NOTICE OF DECISION


On the basis of evidence presented at trial, the following decision is announced.

FINDINGS OF FACT

1.     Plaintiff Gregory Supply operates a lumber yard and building supply operation in Bulrington.  Eric Calacci has developed a business as a home builder, starting with renovations and additions, but more recently progressing to complete homes.

2.     Calacci began purchasing more and more of his materials from Gregory Supply, and eventually opened an account there.  The account agreement made him personally liable for materials purchased, including reasonable attorney fees and collection costs.

3.     Calacci is now married to Annie Calacci.  She helps him in the business, but never signed the account agreement with Gregory.  The two began planning a new home in Williston.  They perused magazines featuring drawings of different styles and sizes of houses, eventually selected one, and then ordered the plans for it.

4.     Those house plans came with a "materials list," which Calacci eventually submitted to Gregory Supply, together with the detailed drawings.  He did so for the purpose of getting a dollar amount representing the required materials, which he could then take to his bank to obtain a mortgage.

       The process of estimating the amount of materials, and then their cost, is sometimes called "doing a take off."  Often, it is done from drawings, as they are the only documentary source.  But here, there was no need for Gregory's personnel to do a take off from drawings.  The architects who had prepared the drawings had also prepared the materials list which Calacci submitted.  It would be a useless expenditure of effort for Gregory or any other materials supplier to go through the arduous task of estimating requisite amounts of different materials, when the actual

designer has already done that in the form of a materials list.

Gregory's list of required materials, and prices, is on a document featuring the word "quote." PL EX 2. The prices there quoted are retail, although a homebuilder with an account and some credit history, such as Calacci, could probably expect somewhat better prices, at least some of the time on some of the items. However, quoting the prices retail is an advantage to someone in Calacci's position, as it suggests to the bank formulating a mortgage offer, that the house may be worth somewhat more than Calacci might actually need to build it.

5.      Calacci testified he was told by the Gregory estimator told him "Don't worry about prices, they are all high." He further testified that defendants' "dispute is not with the unit pricing, but with the quantities."

6.      It is apparent from the Gregory pricing document that quantities were taken directly from the material list—they are all identical. Calacci, however, testified that he "flipped through the materials list, but that there was no reason for me to read it."

7.      At no time did Calacci ever actually order the list of materials, sufficient to build an entire house. Of course, Gregory never delivered an entire house worth of materials at one time. Instead, after the mortgage was approved, the site work completed, the foundation put in place, Calacci began to purchase what he needed, as he needed it.

8.      The quantity of material necessary to complete the house is influenced by the experience, ability and motivation of the carpenter who is doing the actual construction. An inexperienced carpenter may well waste more than an experienced, but always cutting from large pieces, instead of keeping track of scraps that are available. The evidence does not permit the

court to know if waste was an issue on this job.

9.     During construction, Calacci departed from the original plans. Specifically, he abandoned the truss roof system they contain, and built his roof with lumber rafters. This obviously has an influence on quantity and price.

10.     The actual quantity of material ordered by Calacci from Gregory and delivered by it to this personal home construction site differed very substantially from the architect's material list, and therefore from the quantities on which Gregory gave its original price. This is tabulated on PL EX 4. Some of the larger examples include:
- 131 sheets tongue and groove floor underlayment, instead of the 105 on the material list and "quote;"
- 16 pieces of 2x12x18' spruce, instead of three;
- 568 pieces of 2x6x 104-5/8 spruce instead of 250.

There was no showing that any of the quantities claimed delivered by Gregory for this project are incorrect.

11.     There was never any agreement, either express or implied, that Gregory would deliver strictly the materials quantities on the original list submitted by Calacci and quoted by it. Rather, it was always the understanding of these parties that Calacci would order what he needed and Gregory would deliver what he ordered.

12.     The unfortunate reality of this construction project is that it ended up costing significantly more than defendant anticipated. The well cost more than expected. Of course the materials ordered from Gregory cost more than the original pricing document, although the actual prices were often lower. The problem surfaced when Annie Calacci went over monthly

statements from Gregory and finally realized that they were running well beyond the price of the original pricing document.

13.     Martha Phillips, bookkeeper for Gregory, dealt with Annie Calacci on accounting issues.

14.     $40,532 is the present balance due.


CONCLUSIONS OF LAW

A.     To hold Gregory to the total material price of its original document would be unfair, and stretching it beyond what the parties could have intended its meaning to be, or reasonably relied on at the time. Morrisseau v. Fayette, 164 Vt. 358, 366 (1995) (absent ambiguity, contract interpretation is a matter of law). Calacci never promised to buy every item from Gregory. There was no contract requiring him to do so. Material prices can be expected to fluctuate.

B.     To hold Gregory to the total material quantity, or count, of its original document would be unfair. The original projection of amount of material comes directly from the document submitted by Calacci. Why should Gregory go through the uncompensated task of taking off quantities from the drawings, when it is given a materials list by the architect who made those drawings? If anything, one would expect the architect's takeoff to be more accurate.

C.     To hold Gregory to the material quantity, or count, or its original document would be unfair for the additional reason that the amounts ordered by Calacci and delivered by Gregory varied greatly from

those on the architect's material list and Gregory's original pricing document.

D.      From the starting point of delivering a "materials list" and asking for a price to bring to the bank, defendants' position morphs into one of viewing the resulting price to constitute a promise and undertaking to deliver all the materials for that price, despite the fact that Mr. Calacci actually ordered a quite different quantity of those materials.

E.      Defendants rest their case on the word "quote" in that original pricing document. (We use the phrase "pricing document" only to avoid defining our way into one or another conclusion.) They argue, and called a prominent local construction attorney to testify, that "quotes" in the construction industry are relied on and form the basis for contracts. Aside from the fact that courts do not take their law from witnesses, we reject this contention. This is not a situation in which either defendant ever entered into a contract with Gregory to purchase the materials contained in the pricing document, for the prices there stated. It was always Calacci's right, in this relationship with Gregory, to buy this or that item from Home Depot or Rice Lumber, had either offered a better price. In fact, Calacci did not buy the roof-truss joists set out on his material list, and quoted by Gregory. As he was free to do, he changed construction techniques and purchased different materials. There was no evidence that a single item was overpriced by Gregory.

F.      If anything, defendants' argument devolves into one of reliance: "We relied on the 'quote' given us by Gregory, which we took to the bank, and embarked on this construction project based on that reliance." When the project ended up costing a good deal more than

the original price, defendants feel that Gregory should be held to that price.

We reject that argument, because the reliance on which it is founded in fact runs in the opposite direction. Defendants handed Gregory a material list; Gregory relied on the quantities of its customer's material list and quoted it directly. The customer, in turn, never actually looked at the pricing document to see if he agreed with any of the material quantities. Implicit in defendants' argument is the idea that Gregory could not rely on the material list they submitted, but should have gone to the drawings and engaged in the laborious task of taking off all quantities. But there was no evidence that, had Gregory done so, it would have come up with different quantities. Of course, this reliance idea wholly avoids two vital facts: There was never a contract to buy just the quoted materials and the materials actually purchased varied very significantly from the original list. D.J. Painting, Inc. v. Baraw Enters., 172 Vt. 239, 243 (2001) (enrichment must be unjust in the totality of circumstances for quasi-contract recovery).

G.    While there is no question that Eric Calacci is liable for the outstanding balance via his purchase account agreement, Annie Calacci's liability lies outside the realm of this agreement as she was not a party to the agreement. Still, she has received the benefit of the materials that Gregory supplied and will co-own the resulting house. She has also been an active participant in her husband's business and held herself out to Gregory as such. While she may not have done the physical ordering and receiving of supplies, her participation is such that equity requires her to share in her husband's liability. Gregory supplied her with this material with the

understanding that she was part of her husband's enterprise. It is, therefore, irrelevant whether or not she actually contracted to pay for the material herself. The law will raise "a promise to pay when a party receives a benefit and the retention of the benefit would be inequitable." Hedges v. Schinazi, 144 Vt. 605, 607 (1984) (quoting Wilson v. Alexander, 139 Vt. 279, 280 (1981)). In a word, it would be unjust to permit Annie Calacci to benefit from the materials used to construct the house, without holding her equally liable for their cost.

H.     Since Annie Calacci was never a party to the credit agreement, she is not liable for attorney's fees under it. As the claim against her is for materials for her own real property, the attorney fee provision of the Vermont Prompt Pay Act does not apply. 9 V.S.A. § 4009

I.     There may be some question in this case as to whether all the materials for which payment is here sought by Gregory were actually used on this house. Clearly Eric Calacci is liable for their price regardless of whether they were incorporated into this house, for he ordered them. But if he used the materials on some other job site, such as a garage in Bristol, should Annie Calacci be liable? The answer to this question must lie in the question of which party has the burden of proof that one or another item was not, in fact, incorporated into this house. Although plaintiff ordinarily bears the burden of proof, when a party not bearing that burden of proof in fact possesses the information necessary to prove the fact, the law will shift the burden to the party so possessed. Sargent v. Gagne, 121 Vt. 1, 9 (1958); 31A C.J.S. Evidence § 129 ("Ordinarily, a litigant does not have the burden of establishing facts peculiarly within the knowledge of his adversary."). Hence it was the Calaccis'

burden to show that quantities ordered for this house by Eric, and billed to this project by Gregory, in fact went somewhere else. There was no proof on this issue sufficient for the court to make findings thereon.

## NOTICE OF DECISION

The court will expect to enter judgment in favor of Gregory Supply in the amount of $40,532. Defendants Annie and Eric Calacci shall be liable for the principal and interest. Eric Calacci shall be liable for attorney's fees.

Dated at Burlington, Vermont, _____, 2004.


_____
                                                                Judge